## WARREN A. KIMBRO v. JOHN R. MANSON, COMMISSIONER OF CORRECTION

SUPERIOR COURT HARTFORD COUNTY FILE No. 176506

Memorandum filed June 28, 1972

*Lawrence W. Iannotti,* of New Haven, for the plaintiff.

*Robert K. Killian,* attorney general, and *Stephen J. O'Neill,* assistant attorney general, for the defendant.

GRILLO, J. The plaintiff in this mandamus action, ancillary to which he has filed a motion for immediate issue of a writ of mandamus, requests the court to order the defendant commissioner to credit him with 1106 days which he seeks to have deducted from the minimum sentence of four years annexed to his term of life imprisonment by the Connecticut board of pardons. If his claim is valid, he is at present eligible to appear before the board of parole for parole consideration. Succinctly stated, it is his contention that by virtue of §§ 18-97, 18-98, 18-98a and 18-7 of the General Statutes he has accumulated thus far 1106 days and merits a parole hearing. His claim is contested by the defendant.

The parties filed a stipulation of facts, the cardinal ones so far as the issue herein is concerned being the following: On May 21, 1969, the plaintiff was arrested on a murder charge. From May 21, 1969, to June 23, 1971, he was confined in a community correctional center pursuant to a mittimus and denied bail; that period amounts to 763 days. On June 23, 1971, the plaintiff was sentenced to a term of life for the crime of murder—second degree. On October 4, 1971, the Connecticut board of pardons reduced the plaintiff's sentence to a minimum of four years. If the plaintiff comes within the provisions of § 18-97 or § 18-98 of the General Statutes, he is entitled to a total credit of 763 days on his minimum term of four years. If he is entitled to the

benefits of § 18-7 of the General Statutes, he is entitled to a credit of 240 days for so-called "statutory good time" and to 75 days for so-called "meritorious good time." If his sentence is such that he comes within the provisions of § 18-98a of the General Statutes, he is entitled to a further credit of 28 days, and if he is entitled to the total number of days above specified, he is eligible to appear before the Connecticut board of parole for parole consideration.

It is noted that the stipulation of facts submitted to the court specifies simply that the board of pardons reduced the plaintiff's sentence to a minimum of four years. No further facts were presented to the court relative to the action of that board. No change was made with reference to the life-term aspect of the sentence which the plaintiff has been serving.

If the board of pardons had commuted the sentence from life imprisonment to expire on a date certain, the status of the plaintiff would have automatically changed, entitling him to the credits he now claims via §§ 18-97, 18-98 and 18-98a, since his status would have the same legal effect as though the sentence had originally been for the commuted term. See *Pittman* v. *Richardson,* 201 S.C. 344, 347; see also 67 C.J.S., Pardons, § 15 (5). When a prisoner's sentence is reduced from a life sentence to a definite term other than life, he comes within the language of the statutes allowing a diminution of such a definite term. *State ex rel. Murphy* v. *Wolfer,* 127 Minn. 102, 104. This, however, was not done by the board of pardons. The legal effect of the action of the board of pardons was to allow the life term to remain, granting the plaintiff, however, the right to appear before the board of parole after he has served four years. The question is, therefore, re-

duced to an inquiry as to whether one having the "sentence" status of the plaintiff is entitled to the credits claimed by him under the aforementioned statutes, so that his minimum term is thereby fulfilled and he is given immediate parole eligibility standing.

This court is concerned, therefore, with the following sections of the General Statutes: Sections 54-125 (parole), 18-7 (reward of inmates), 18-97 (credit for period spent in custody under mittimus), 18-98 (commutation of sentence where bail is denied), and 18-98a (deduction of time for periods of employment). It is not necessary to quote these statutes in toto but only the parts relating to the issue presented.

Section 54-125 provides: "Any person confined . . . for an indeterminate sentence, after having been in confinement under such sentence for not less than the minimum term, or, if sentenced for life, after having been in confinement under such sentence for not less than twenty-five years, less such time, not exceeding a total of five years, as may have been earned under the provisions of section 18-7, may be allowed . . . parole . . . ."

Section 18-7 specifies: "Any prisoner may, by good conduct and obedience to the rules of said institution, earn a commutation or diminution of his sentence, as follows: Sixty days for each year, and pro rata for a part of a year, of a sentence which is not for more than five years; and ninety days for the sixth and each subsequent year, and pro rata for a part of a year, and, in addition thereto, five days for each month as a meritorious time service award . . . ."

Section 18-97 states: "Any person receiving . . . a sentence to a correctional institution . . . shall receive credit towards . . . any portion of such

sentence as to which execution is not suspended for any days spent in custody under a mittimus . . . , provided he shall conform to the rules of the institution. . . ."

Section 18-98 provides as follows: "Any person who has been denied bail . . . and who is subsequently imprisoned is entitled to commutation of his sentence by the number of days which he spent in a community correctional center from the time he was denied . . . bail to the time he was so imprisoned. The commissioner of correction shall, if such person has conformed to the rules of the institution, credit such person with the number of days" so certified.

Section 18-98a recites: "Each person committed to the custody of the commissioner of correction who is employed [inside or outside the institution] . . . for a period of one hundred eighty consecutive days . . . may have twenty-six days deducted from his sentence . . . ."

Prior to 1931, the statute relative to parole of prisoners made no mention of those serving a life sentence. Rev. 1930 § 6509. In 1931, legislation was passed amending § 6509 as follows: "Any person sentenced to the State Prison, after having been in confinement under such sentence for a period not less than the minimum term, or, if sentenced for life, after having been in confinement under such sentence for a period not less than twenty-five years, may be allowed to go at large on parole . . . ." Cum. Sup. 1933, § 1185b. The statute as amended in 1935 omitted "a period" in two places. Cum. Sup. 1935, § 1730c. In 1939, the statute was further amended as follows: "Any person sentenced to the State Prison, after having been in confinement under such sentence for not less than the minimum term, or, if sentenced for life, after having been in confinement under such sentence for not less than

twenty-five years, less such time, not exceeding a total of five years, as may have been earned under the provisions of section 783c [now § 18-7] may be allowed to go at large on parole . . . ." Cum. Sup. 1939, § 1470e. This statute is designated as § 54-125 in the present revision of the General Statutes.[1]

Sections 18-97 and 18-98 were adopted at the 1967 session of the legislature. Public Acts 1967, Nos. 549 § 15, 869. Both statutes were amended in 1969. Public Acts 1969, No. 735 §§ 1, 2. Section 54-125 was also amended in 1969. Public Acts 1969, No. 575. The changes made are not relevant to the present issue, however. The amendment to § 54-125 made no change relative to the provision allowing a five-year so-called "good time" maximum for inmates serving a life term. Section 18-98a was passed at the same 1969 session of the General Assembly. Public Acts 1969, No. 298 § 1.

The legislature is presumed to have, in enacting a law, knowledge of existing relevant statutes so as to make one consistent body of law. *Hartley* v. *Vitiello*, 113 Conn. 74, 82. It is presumed to know the effect that its nonaction will have on any one of them. No modification was made at the 1969 session with reference to § 18-97 or § 18-98 or § 54-125 which would bring one serving a life term within the pano-

---

[1] Whether this statute (with relation to life-term prisoners convicted for offenses committed after October 1, 1971) is in conflict with the provisions of the new Penal Code (effective as of that date) so far as automatic eligibility for parole is concerned does not concern the court. See §§ 53a-45 and 53a-54, as well as § 53a-35, as amended by Public Acts 1971, No. 871 § 13. The offense of the plaintiff, committed prior to the effective date of the code, must be considered in the light of the law applicable at the time of his commission of the offense. This observation is made, since murder under the new code is punishable as a class A felony unless the death penalty is imposed. General Statutes § 53a-54. A class A felony requires the setting of a minimum sentence of not less than ten nor more than twenty-five years. General Statutes § 53a-35, as amended by Public Acts 1971, No. 871 § 13.

ply of benefits provided for in §§ 18-97 and 18-98. If the legislature had intended to include those serving a life term within the sphere of §§ 18-97, 18-98 and 18-98a, that purpose could easily have been effected by adding a short phrase to § 54-125, as was done, incidentally, in § 1470e of the 1939 Cumulative Supplement, which incorporated by reference what is now § 18-7. "A criminal statute must be strictly construed, and no act should be held to be within its ambit which does not fall within its spirit and the fair import of its language. . . . The meaning of the statute cannot be extended by presumption or intendment." *State* v. *Moore,* 158 Conn. 461, 465.

Again, at the 1971 session of the legislature, § 54-125 was amended, and again the act repeated the phrase which appeared in the aforementioned first statute, § 1470e, in 1939: ". . . if sentenced for life, after having been in confinement under such sentence for not less than twenty-five years, less such time, not exceeding a total of five years, as may have been earned under the provisions of section 18-7 . . . ." Public Acts 1971, Nos. 781 § 2, 825. When the provisions of an original act are repeated in the body of amendments, either in the same or equivalent words, it is considered that the intent of the legislature is that the original law should continue. See 1 Sutherland, Statutory Construction (3d Ed.) § 1933.

To put it briefly, the failure of the General Assembly to alter the statute (§ 54-125) over a period of years with reference to the means whereby a prisoner might reduce the minimum statutory term which he must serve for parole consideration is a clear indication of legislative intent that one serving a life term is entitled to automatic parole consideration only after twenty-five years, with the proviso that he may reduce that eligibility time only by five

years—only through "good conduct" and "meritorious service" and by conformity to the rules of the institution, and only by way of § 18-7.

To allow the prisoner serving a life term credit in excess of five years of "earned" time by granting him rights accorded non-life-term prisoners would fly in the face of the oft-expressed determination of the legislature that one serving a life term must serve, absent pardons board and/or parole board action, at least twenty years—assuming he qualifies for the five-year "good time" provision—in order to obtain the automatic right to appear before the board of parole.

The court has taken judicial notice of the "Report of the Legislative Committee on Parole Eligibility" submitted to the 1971 General Assembly as provided by House Joint Resolution 282 of the 1969 Session of the General Assembly. The committee submitting the report consisted of legislators, the chairman of the board of parole, the commissioner of correction, and other penal authorities. That report emphasizes: "Connecticut is joined only by Rhode Island in requiring that 20 years must be served of any life sentences." The report makes no mention of any reduction of the twenty-year provision.[2] That is to say, it makes no reference to statutes which the plaintiff claims pertain to his status and to the benefits of which he claims he is entitled. The report concludes that "no immediate action is deemed necessary, [but] it is urged that this [1971] session of the General Assembly authorize continuing study of provisions for parole eligibility." The session of the General Assembly to which this report was referred

---

[2] The report does make mention of the provisions of the new Penal Code requiring a minimum sentence to be set for those convicted under a class A felony and urges an amendment to include within its scope all prisoners serving life sentences in Connecticut. See note 1, supra.

is the session which reenacted § 54-125 without changing the statute so as to afford a further means of a life-term prisoner's reducing his sentence for parole appearance.

It is readily apparent that, although having many opportunities to amend § 54-125 to afford other means of reducing the minimum sentence for parole consideration, the legislature has consistently allowed for a reduction of five years via one statute. (§ 18-7) alone. In the many amendments of § 54-125 since its original enactment, the General Assembly has been firm in retaining the specific provision limiting the life-term prisoner to one method by which he himself can effect a reduction of his sentence—and then for a maximum period of five years—which must be earned by the prisoner during his period of incarceration under the standards of § 18-7. " 'Where a statute creates and regulates, and prescribes the mode and names the parties granted right to invoke its provisions, that mode must be followed and none other . . . .' " 2 Sutherland, Statutory Construction (3d Ed.) § 4915, p. 414.

It is interesting to note, furthermore, that while §§ 18-97 and 18-98 are not "good conduct" statutes, nevertheless the rights thereunder granted are contingent upon conformity to the "rules of the institution." This same phraseology is employed in the "good conduct time" statute—§ 18-7. It is questionable that the legislature would, in one statute, limit one serving a life term to five years of "good time" and intend, by another statute, to grant him additional means of reducing his sentence by statutes whereby his rights ripen by the same criterion—conformity to the rules of the institution.

"It is a well-settled principle of construction that specific terms covering the given subject matter will prevail over general language of . . . another stat-

ute which might otherwise prove controlling." *Kepner* v. *United States,* 195 U.S. 100, 125; *Charlton Press, Inc.* v. *Sullivan,* 153 Conn. 103, 110. To accede to the plaintiff's request would be to legislate judicially by engrafting the general statutes §§ 18-97, 18-98 and 18-98a to § 54-125, which encompasses a specific reference to the diminution of sentence rights of one serving a life sentence. This the court cannot do. The defendant is limited to crediting the plaintiff with only time he has earned to this date by way of § 18-7.

Furthermore, although the court was not presented with any evidence concerning the meeting of the board of pardons, we assume, without basing this decision on that assumption, that the board, in granting the plaintiff the privilege of earning the right to be considered for parole after serving four years of a life sentence, had before it the complete history of the plaintiff's presentence incarceration, including its duration.

In conclusion, it is noted that the defendant has stipulated that if § 18-7 is applicable to the plaintiff —and the court has so determined—the plaintiff is entitled to a credit of 240 days for so-called "statutory good time" and to 75 days for so-called "meritorious good time." No evidence was introduced at the hearing, and the court is perplexed as to the method of computation resorted to. The stipulation is dated June 13, 1972, as of which date the plaintiff had served less than one year of his sentence. The statute, § 18-7, allows one to "earn" by his conduct sixty days for each year, and five days for each month, for meritorious service. This opinion is not to be construed to mean that the court has concluded either that the computation is correct or that it is not valid. That determination was not required in view of the fact that the plaintiff requests an order that the defendant credit him with 1106 days to af-

ford him immediate parole eligibility status, and obviously the order sought will be denied. The court is not necessarily bound by the stipulation and will not attempt mathematically to set forth the days "earned" on the basis of the stipulation only. Since, in the absence of further evidence, the court has reservations as to whether prison officials have properly calculated the number of days earned by the plaintiff, and in view of the facts recited above, the court will not at this time determine the number of days with which the plaintiff is to be credited by virtue of § 18-7. The stipulation of the parties crediting the plaintiff with having already earned 240 days of "good conduct time" and 75 days of "meritorious good time" will be disregarded. See *Peiter* v. *Degenring,* 136 Conn. 331, 338.

It is adjudged that the plaintiff's request for an order in the nature of a mandamus directing the defendant commissioner of correction to credit the plaintiff with 1106 days to be applied to the plaintiff's sentence of June 23, 1971, as modified by the board of pardons on October 4, 1971, be, and it is hereby, denied.