ALASKA BOARD OF FISH AND GAME
(Alaska Guide Licensing and Control
Board), Cross-Appellant,

v.

Clarence Raymond LOESCHE,
Cross-Appellee.

Clarence Raymond LOESCHE, Appellant,

v.

ALASKA BOARD OF FISH AND GAME
(Alaska Guide Licensing and Control
Board), Appellee.

Nos. 2292, 2273.

Supreme Court of Alaska.

July 11, 1975.

Michael L. Rubinstein, Wagstaff, Rubinstein & Middleton, Anchorage, for appellant and cross-appellee.

Avrum M. Gross, Atty. Gen., Juneau, and Gerald W. Markham, Asst. Atty. Gen., Anchorage, for appellee and cross-appellant.

Before RABINOWITZ, Chief Justice, and CONNOR and BOOCHEVER, Justices.

## OPINION

CONNOR, Justice.

On December 4, 1971, the Alaska Department of Fish and Game [hereinafter, the Department], filed an accusation against appellant, praying. that his license as a registered guide and outfitter be revoked. The accusation alleged that appellant, in connection with a hunt for brown bear, had (1) failed to execute and submit an approved guide-client contract contrary to 5 Alaska Administrative Code 87.070(b) [hereinafter cited AAC];[1] (2) permitted a hunting client to hunt brown bear before midnight of the same day in which he was airborne, contrary to 5 AAC 81.070(b)(6),[2] without attempting to prevent or report the violation; (3) conducted a hunt from a campsite which was not registered with the Department, thereby violating 5 AAC 81.-070(b)(4);[3] and (4) aided in the commission of a violation of AS 16.50.215(a)(3)[4] by employing an unlicensed assistant guide, thereby violating AS 16.50.215(a)(2).[5]

1. 5 AAC 87.070(b) (repealed 1974) provided:
   "(b) A contractual agreement, properly executed on a form provided for this purpose, must be signed by both a guide and his clients before actually engaging in guiding. One copy of the contract must be retained by the guide on his person or at his camp in the hunting area when guiding the person named on the contract. One copy of the contract must be furnished to the client and one copy must be submitted to the Department in Juneau within 10 days after its execution.

2. 5 AAC 81.070(b)(6), Register No. 50, (replaced 1974) provided, in part:
   ". . .
   (6) no person may take or assist in taking black or glacier bear in Unit 5, sheep, bison or brown or grizzly bear in any unit, or big game in Unit 15(B) until after midnight of any day in which he was airborne;"

3. 5 AAC 81.070(b)(4), Register No. 47, (replaced 1973) provided:
   "The illegal methods and means of taking big game . . . are
   (4) by use of aircraft in Alaska in any manner as an aid in taking brown or grizzly bear except for transportation to a pre-existing camp or to a site for the purpose of establishing a camp; when aircraft is used for transportation, a camp must be established before guiding for, hunting or taking brown or grizzly bear, provided that in Game Management Units 9 and 10, brown bear guiding shall be conducted from pre-registered camp locations as filed by the guide; camps for the spring and fall seasons shall be registered 10 days prior to the opening of the season; camp registrations are valid for the duration of the appropriate season and may not be changed, transferred to a different location or to other persons during the valid period of the permit; camps shall be pre-registered by mail or in person on an appropriate form at the Alaska Department of Fish and Game office in Anchorage; forms may be obtained at any Departmental office."

4. Former AS 16.50.215(a)(3) [§ 1, Ch. 32, SLA 1968, am. § 2, Ch. 140, SLA 1968, enacted as AS 16.50.120(a)(3) (repealed 1973)] provided, in part:
   "(a) It is unlawful for
   .    .    .    .    .
   (3) a person to guide as defined in this chapter without being licensed under this chapter . . . ."

5. Former AS 16.50.215(a)(2) [§ 1, Ch. 32, SLA 1968, enacted as AS 16.50.120(a)(2) (repealed 1973)] provided:
   "(a) It is unlawful for
   .    .    .    .    .
   (2) an outfitter, master guide, registered guide or assistant guide to aid the commission of a violation of this chapter or Ch. 5 of this title or a regulation promulgated under either chapter, or permit the commission of a violation in his sight without attempting to prevent it, short of using force, and without reporting it;"

A hearing on the matter was held before the Board of Fish and Game, acting as a Guide Licensing Control Board [hereinafter, the Board] on February 25, 1972. The evidence showed that two men, one Breckenridge and one Lawson, were apprehended by the Department's enforcement officers while tracking a large wounded brown bear; that the two had spotted the bear from the air; that both had been landed within a few miles of the bear by appellant's aircraft the same day in which they were hunting; and that appellant, piloting the aircraft, returned to the landing area to pick up the two men after they had been cited by the Department's officers. There was also evidence that Breckenridge was appellant's client and that Lawson, who was not licensed as a guide or assistant guide, was assisting Breckenridge, a resident of Michigan, in hunting the bear.

The Board made factual findings that appellant had committed all of the acts and omissions contained in the accusation. The Board stated:

"[T]he activities [relating to the Breckenridge hunt], when engaged in by a person licensed by the State of Alaska as a registered guide is unsportsmanlike, unethical and degrading to the outfitting and guiding profession. Such conduct constitutes grounds for revocation, suspension or denial of renewal of respondent's guide license pursuant to the provisions of AS 16.20.205(2)."

The Board also noted:

"[T]he admission by respondent that he guided on big game hunts in Alaska . . . and failed to execute and submit to the Alaska Department of Fish and Game approved guide-client contracts pertaining to those hunts . . . is grounds to revoke, suspend or deny renewal of respondent's guide license."

Appellant's guide license was revoked by order of the Board dated June 20, 1972.

On appeal before the superior court, the Board's order of revocation of appellant's guide license was affirmed.

The court found an abuse of discretion by the Board in its finding that appellant's acts were unsportsmanlike, unethical and degrading conduct to the guiding profession, because no such charges were contained in the accusation. It also found an abuse of discretion in the finding that appellant admitted failing to file guiding contracts because the court found insufficient evidence to support the finding of the Board. However, both of these findings by the court were held to be non-prejudicial error because the court found that the other findings by the Board formed a sufficient basis for revocation of appellant's license.

Appellant first asserts that he is entitled to a jury trial regarding the charges specified in the accusation against him, based on *Baker v. City of Fairbanks*.[6] In *Baker*, we held that in any criminal prosecution the defendant is entitled to a jury trial upon demand, based upon the requirements of article I, § 11 of the Alaska Constitution. We defined criminal prosecution for this purpose to include:

". . . offenses which may result in the loss of a valuable license, such as a driver's license or a license to pursue a common calling, occupation, or business."[7]

Our statutes authorized the Guide Licensing and Control Board to suspend, revoke or deny renewal of a guide license if it found that the licensee had violated a provision of federal, or state game, or guiding statutes or regulations.[8] Appellant was charged with violating state statutes and regulations pertaining to guiding and the taking of game. Therefore, these charges would subject him to potential criminal penalties if they had been brought in a traditional criminal court, rather than in an administrative proceeding.

---

6.  471 P.2d 386 (Alaska 1970).

7.  471 P.2d at 402 (footnote omitted).

8.  Former AS 16.50.205(4) [§ 1, Ch. 32, SLA 1968, *enacted as* AS 16.50.110(4) (repealed 1973)].

Our definition of a criminal prosecution in *Baker* has been extended to provide a jury trial in such traditionally non-criminal areas as juvenile proceedings [9] and contempt.[10] Our decisions have centered upon the distinction between offenses carrying sanctions which are punitive and those having a primarily remedial effect.[11]

In the case at bar, substantial interests other than criminality were involved in the proceedings. The Board's findings of criminality served as a basis for determining appellant's fitness as a guide, rather than as a basis for subjecting him to criminal penalties. The sanction imposed was remedial in that it served the basic purpose of the licensing statutes, which is to ensure that only persons who are personally and morally fit are allowed to engage in guiding. In *Baker* we distinguished this type of proceeding from criminal prosecutions which could result in the penal loss of a professional license. We stated there that our definition of a criminal prosecution

". . . does not cover revocation of licenses pursuant to administrative proceedings where lawful criteria other than criminality are a proper concern in protecting public welfare and safety, as the basis of revocation or suspension in such instances is not that one has committed a criminal offense, but that the individual is not fit to be licensed, apart from considerations of only guilt or innocence of crime." [12]

We conclude that the Alaska Constitution does not entitle appellant to a jury trial in administrative proceedings affecting a professional license where his fitness to practice that profession is the primary concern.[13]

We have likewise concluded that the federal constitution does not require that a jury trial be made available in proceedings to revoke a professional license, even though the acts charged may also subject the respondent to criminal prosecution. In *Ex parte Wall*,[14] an attorney was removed from practice for participating in a lynching. The Supreme Court held that a summary proceeding, without a jury trial, was sufficient for disbarment so long as the due process requirements of adequate notice and opportunity for a hearing were met.[15]

■ Appellant also claims that he was denied due process because of several alleged defects in the notice and hearing which he received from the Board.

Appellee asserts that issues based upon insufficiency of notice are not before this court due to a failure of appellant to fully comply with Appellate Rule 9(e).[16] Appellant's points on appeal assert, in pertinent part:

". . .

2. Appellant was denied due process of law before the Board.

3. The Board violated appellant's right to confrontation.

4. The Board's decision was based upon improper findings.

. . . "

It is also alleged that these statements are not sufficiently concise to place the several

---

9. R. L. R. v. State, 487 P.2d 27 (Alaska 1971).

10. Johansen v. State, 491 P.2d 759 (Alaska 1971).

11. *See* Gwynn v. Gwynn, 530 P.2d 1311 (Alaska 1975); Johansen v. State, 491 P.2d 759 (Alaska 1971).

12. 471 P.2d at 402, n. 28.

13. Similarly, we held in In re Cornelius, 520 P.2d 76, 83 (Alaska 1974), that an attorney is not entitled to a jury trial in bar disciplinary proceedings.

14. 107 U.S. 265, 2 S.Ct. 569, 27 L.Ed. 552 (1883).

15. *Id.* at 288–89, 2 S.Ct. 569; *see* Barnes v. Lyons, 187 F. 881 (9th Cir. 1911).

16. Appellate Rule 9(e) provides:
"The appellant shall serve and file with his designation a concise statement of the points on which he intends to rely on the appeal. The court will consider nothing but the points so stated. On motion, and for cause, the statement of points may be supplemented subsequent to the filing of the designation of record."

specific due process issues before the court.

Allegations of error must "inform the opposing party and the court of matters [the court] shall be called upon to decide." [17] The specific defects asserted by appellant, involving an alleged lack of notice, unconstitutional vagueness of the regulations and sufficiency of the evidence, were argued by the parties before the superior court. Although appellant's statement of points on appeal is phrased quite generally, we cannot say in this instance that it fails to inform the opposing party of the matters raised before this court.[18]

■ Appellant's allegations of due process defects center upon the Board's finding that appellant's actions were "unsportsmanlike, unethical and degrading to the guiding profession." He asserts that this finding formed the basis for revocation of his license, although he was charged with specific game law violations in the accusation filed before the board.[19]

We need not, however, reach the questions appellant raises relative to these findings. The Board found that appellant had committed the alleged violations of state game statutes and regulations which were set out in the accusation. This finding was supported by adequate evidence presented at the administrative hearing. Such violations comprise grounds for license discipline, including revocation, un-

der the statutes in effect at the time appellant was charged.[20] Therefore, a valid basis existed for the board's order of revocation.

Appellant asserts that, if there was error in the Board's finding of "unethical" conduct, the independently valid basis for revocation represented by its finding of game law violations cannot support the Board's action. He cites *Cassius Clay v. United States* [21] for the proposition that an administrative ruling cannot stand where it is unclear whether a legally sufficient basis or an invalid one prompted the administrative decision. In *Clay*, a selective service registrant was denied classification as a conscientious objector by the Selective Service Appeals Board, a decision which could have been based upon any of three different factual determinations. When one of these factual bases was held legally insufficient, the United States Supreme Court invalidated the administrative determination because it might have been the product of a factual finding which was legally insufficient to support the classification.[22]

The *Clay* case is distinguishable from the case at bar because there were no stated factual findings in the administrative order challenged therein. Hence, it was not clear that any legally sufficient basis remained for the decision. In the case at bar, however, clear findings have been set

17. Fairview Public Utility Dist. No. 1 v. City of Anchorage, 368 P.2d 540, 542 (Alaska 1962); Myers v. Sill, 497 P.2d 920, 923 (Alaska 1972).

18. *Cf.* Myers v. Sill, 497 P.2d 920 (Alaska 1972).

19. These were enumerated as separate grounds for license discipline under the statute. Former AS 16.50.205 [§ 1, Ch. 32, SLA 1968, *enacted as* AS 16.50.110 (repealed 1973)] provided, in part:
"After a hearing, the board may revoke, suspend or deny renewal of a license if the board finds that the licensee
. . . . .
(2) engages in activities which are unsportsmanlike, unethical, unsafe or degrading to the outfitting and guiding profession

or which adversely affect the natural resources or the principles of conservation;
. . . . .
(4) violates a provision of a federal or state sport fish, game or guide statute or regulation, . . . . ."

20. Former AS 16.50.205 [§ 1, Ch. 32, SLA 1968, *enacted as* AS 16.50.110 (repealed 1973)].

21. 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971).

22. *Clay* was a criminal case rather than an administrative appeal. However, an administrative classification formed the basis for the criminal conviction, which was reversed when the administrative order was held invalid.

out, and the Board's action, as we noted previously, is adequately supported by its finding that appellant violated the game laws. Without deciding the validity of other findings focused upon by appellant, we hold that there was a sufficient basis for the Board's action.

■ Finally, appellant asserts ·that his right to avoid self-incrimination, provided in article I, § 9 of the Alaska Constitution and the Fifth Amendment to the United States Constitution, was violated. Because the charges against him in the administrative proceeding could subject him to criminal sanctions in another forum, he claims. that he is placed in an unconstitutional dilemma by being forced to risk self-incrimination by presenting testimony at the disciplinary hearing in order to protect his livelihood.

Appellant failed to raise this question before the Board or the superior court. Nor was the issue included in his statement of points on appeal to this court. Appellate Rule 9(e) provides that this court will consider only the questions stated in the points on appeal. We, therefore, do not reach this question.

The state, as cross-appellant, has challenged the superior court's conclusion that it was harmless error for the Board to have found that appellant had failed to file guide-client contracts pursuant to 5 AAC 87.070. It has also raised a question regarding the jurisdiction of the Board to reconsider its findings upon a remand. Because we have concluded that appellant's violations relating to the taking of game were sufficient to support the revocation of his guiding and outfitting license, and because we shall not remand the case, we need not reach either question.

Affirmed.

ERWIN and BURKE, JJ., not participating.