Richard J. HERSCHER, Appellant,

v.

STATE of Alaska, DEPARTMENT OF COMMERCE, Appellee.

STATE of Alaska, DEPARTMENT OF COMMERCE, Cross-Appellant,

v.

Richard J. HERSCHER, Cross-Appellee.

Nos. 2927, 2967.

Supreme Court of Alaska.

Sept. 9, 1977.

---

5. *Gilbert, supra.*

Sandra K. Saville, of Kay, Christie, Fuld & Saville, Anchorage, for appellant/cross-appellee.

Thomas E. Meacham, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee/cross-appellant.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ., and DIMOND, J. Pro Tem.

DIMOND, Justice Pro Tem.

Richard Herscher was a licensed hunting guide. He was convicted in court of having violated two regulations of the Board of Fish and Game.[1] One violation involved transporting a bear hide without the skull, in violation of a regulation designated in the Alaska Administrative Code as 5 AAC 81.180(d).[2] The other violation involved an attempt to transfer part of a brown bear by aircraft from a location in game management unit # 9, which was neither an airport nor a registered hunting camp. This act was in violation of 5 AAC 81.070(b).[3]

---

1. A violation of a rule or regulation of the Board of Fish and Game constitutes a misdemeanor, punishable by a fine of not more than $1,000, or by imprisonment for not more than 6 months, or by both. AS 16.05.900.

2. 5 AAC 81.180(d) provides:

(d) Until a bear skull has been examined, sealed, and had a rudimentary lower premolar tooth removed by the department it shall be accompanied by the skin of the bear from which the skull was taken.

3. 5 AAC 81.070(b) provides:

(5) in Game Management Units 9 and 10, brown or grizzly bear or parts of brown or grizzly bear taken on guided hunts may not be transported by aircraft except between registered camps or between a registered camp and an airport or between airports;

The State of Alaska, through its attorney general, filed with the Guide Licensing and Control Board (hereafter referred to as the board) an accusation against Herscher, based on the above mentioned violations of the fish and game regulations. In addition, the accusation charged Herscher with having violated a statute which authorized the board to discipline a licensed guide for having engaged in "unethical or unsafe activity".[4] This accusation was related to an incident that arose after State Trooper Rotermund had arrested Herscher for transporting part of a bear from an unregistered camp.[5]

An administrative hearing, adversary in nature, was held on these matters in accordance with the requirements of the Administrative Procedure Act.[6] Herscher was present in person and was represented by counsel. Witnesses were examined and cross-examined. At the conclusion of the hearing, it was found that the allegations made in the accusation were true, and that Herscher's activities, as recited in the accusation, were grounds for revocation of his license as a guide. Consequently, the board revoked his license for a period of three years. Herscher appealed to the superior court which affirmed the board's decision. He now appeals to this court.

Herscher claims that the accusation or charge that he unlawfully transported a brown bear hide without the skull accompanying the hide does not state an offense. He maintains that there is an offense only when one transports a skull without the

skin, and that it is no offense to transport a skin without a skull.

The pertinent regulation on this point is 5 AAC 81.180 which reads in relevant part:

SEALING OF BEAR SKINS AND SKULLS.

(a) No person may possess in the state, transport or export from the state the skin or skull of a bear, whether taken inside or outside of the state, unless it has been sealed by an authorized representative of the department.

(b) Notwithstanding the provisions of (a) of this section, a person taking a bear may possess the unsealed skin or skull of the bear taken for a period not to exceed 30 days from the time of taking for the purpose of transporting the skin and skull to an authorized representative of the department for sealing. The skin and skull of a bear shall be sealed within 30 days from the time of taking or shall be tendered immediately for sealing upon the request of an authorized representative of the department. . . .

(d) Until a bear skull has been examined, sealed, and had a rudimentary lower premolar tooth removed by the department it shall be accompanied by the skin of the bear from which the skull was taken.

 It is apparent upon consideration of the portions of the regulation, quoted above, and not simply subdivision (d) alone, that it was the intent of the Board of Fish and Game to have both the skull and skin

---

**4.** This conduct is made the proper basis of board action by virtue of AS 08.54.200(b) which provides:

After a hearing, the board may revoke, suspend, or deny renewal of a license if the board finds that the licensee (1) engaged in unethical activity, unsafe activity, or activity which adversely affects the natural resources of the state when such activity is unrelated to the legal and legitimate purposes of the contract hunt; or (2) violated a provision of a federal or state sport fish, game or guide statute or regulation.

**5.** After arresting Herscher for transporting part of a bear from an unregistered camp in violation of Fish and Game Board regulation 5 AAC 81.070(b) [*supra*, n. 3], State Trooper Rotermund got in Herscher's plane with him in order

to fly to Port Heiden. The tail section of the aircraft was stuck on a gravel bar. Rotermund got out of the plane and grabbed the tail section on the right hand section of the fuselage with his back toward the front of the plane. At this point, Herscher accelerated the engine and proceeded to take off, leaving Trooper Rotermund behind. At that moment, Rotermund was unable to get away from the tail section of the aircraft, and was forced to do several feet of "back pedaling" in order to avoid being hit by the plane. The officer then found himself alone with only his uniform, weapon, parka and hip waders, and he was obliged to hike about five miles to the nearest known camp.

**6.** AS 44.62.

examined and sealed by a representative of the Department of Fish and Game before they could be transported for private purposes of the hunter. The purpose of the regulation cannot be achieved when only the skin is transported and the skull is not made available. Although the meaning of subdivision (d) may not be clear when read alone, regulations, like statutes,[7] should be read as a whole. When read as a whole, Herscher's actions in transporting, for his own purposes, the bear skin without the skull, were in violation of the regulation.

After the hearing, the board issued its order. The board concluded it had authority under AS 08.54.200 and AS 16.50.205 to revoke Herscher's guide license. Herscher contends that neither of these statutes may be properly employed by the board in this case. This argument centers on the following pertinent dates:

1. Date of incidents that form basis of accusations ---------------- 5/10/72
2. Date first accusation was filed ----12/19/73
3. Date amended accusation was filed ------------------------11/15/74
4. Date hearing was held ----------11/18/74
5. Date AS 16.50.205 was repealed -- 3/14/73
6. Date AS 08.54.200 became effective ---------------------- 3/14/73

Herscher argues the board was powerless to act on the accusation against him under AS 16.50.205 because it was repealed before the amended accusation was filed, and similarly, that it was powerless to act under AS 08.54.200 because this statute was enacted after the date of the violations and has only a prospective effect.

An examination of these two statutes shows that they are virtually identical to the extent they form the basis for the charges against Herscher.[8]

■ Herscher is correct in stating the general rule to be that statutes operate prospectively and not retrospectively. This concept is embodied in statutory form in this state. AS 01.10.090 states that "no statute is retrospective unless expressly declared therein."

■ But there are exceptions to this rule. As Professor Sutherland points out:

Provisions of the original act or section which are repeated in the body of the amendment, either in the same or equivalent words, are considered a continuation of the original law. This rule of interpretation is applicable even though the original act or section is expressly declared to be repealed. In some states this rule of interpretation has been enacted into law. The provisions of the original act or section re-enacted by the amendment are held to have been the law since they were first enacted, and the provisions introduced by the amendment are considered to have been enacted at the same time the amendment took effect. Thus, rights and liabilities accrued under the provisions of the original act which are re-enacted are not affected by the amendment.[9]

---

**7.** *See* 2A C. Sands, Sutherland Statutory Construction § 46.05 (4th ed. 1973).

**8.** AS 16.50.205 reads in pertinent part:
*Grounds for disciplining a licensee.* After a hearing, the board may revoke, suspend or deny renewal of a license if the board finds that the licensee
(2) engages in activities which are unsportsmanlike, unethical, unsafe or degrading to the outfitting and guiding profession or which adversely affect the natural resources or the principles of conservation;
(4) violates a provision of a federal or state sport fish, game or guide statute or regulation; or . . .
AS 08.54.200 reads in pertinent part:
(b) After a hearing, the board may revoke, suspend, or deny renewal of a license if the board finds that the licensee

(1) engaged in unethical activity, unsafe activity, or activity which adversely affects the natural resources of the state when such activity is unrelated to the legal and legitimate purposes of the contract hunt; or
(2) violated a provision of a federal or state sport fish, game or guide statute or regulation.

**9.** Sutherland Statutory Construction, Vol. 1A, § 22.33 at 191 (4th ed. 1972) (footnotes omitted). *See Kimbro v. Manson*, 30 Conn.Sup. 20, 295 A.2d 569, 572–573 (1972); *Bailey v. Tarr*, 469 F.2d 409, 411 (9th Cir. 1972). *See also, Great Northern Ry. Co. v. United States*, 155 Fed. 945 (8th Cir. 1907).

This exception to the general rule, which embodies a sensible approach to statutory construction and is a recognized method of effectuating statutory continuity,[10] is embodied in a statute of this state. AS 01.10.-100 provides:

> (a) The repeal or amendment of any law does not release or extinguish any penalty, forfeiture, or liability incurred or right accruing or accrued under such law, unless the repealing or amending act so provides expressly. The law shall be treated as remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of the right, penalty, forfeiture, or liability.

■ In some respects AS 08.54.200 revises, clarifies and expands its predecessor statute, AS 16.50.205. But, in both statutes, discipline in the way of revocation of a guide's license may be based on (1) conduct which is unethical or unsafe, and (2) violation of a state sport fish, game or guide statute or regulation. We conclude that the board had the authority to revoke Herscher's license for violations of the pertinent provisions of AS 08.54.200.

Herscher contends that the effect of the revocation of his license was to deprive him of property without due process of law, contrary to the federal and state constitutions.[11] The state counters with the assertion that a guide license does not qualify as a property interest which would be protected by the requirements of due process.

■ Due process of law requires that before property rights can be taken directly or infringed upon by governmental action, there must be notice and opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). And once a due process claim is raised, it must be determined whether there is a "deprivation of an individual interest of sufficient importance to warrant constitutional protection." *Nichols v. Eckert*, 504 P.2d 1359, 1362 (Alaska 1963) (footnote omitted).

■ We find that Herscher's proprietary interest in the hunting guide license is of sufficient importance to warrant protection under constitutional requirements relating to due process of law. In *Frontier Saloon, Inc. v. Alcoholic Beverage Control Board*, 524 P.2d 657, 659–660 (Alaska 1974), we held:

> It has long been recognized that an interest in a lawful business is a species of property entitled to the protection of due process. . . . This interest may not be viewed as merely a privilege subject to withdrawal or denial at the whim of the state . . . . Neither may this interest be dismissed as *de minimis*. A license to engage in a business enterprise is of considerable value to one who holds it. (footnote and citations omitted)

In addition, in *Alaska Board of Fish and Game v. Loesche*, 537 P.2d 1122 (Alaska 1975), we considered a due process claim by Loesche relating to the suspension of his guide license. While we found it unnecessary to adjudicate the full scope of protections required by due process of law, by implication we found the requirements of adequate notice and opportunity for a hearing were required. 537 P.2d at 1125.

The state's argument against the application of due process is based on the assertion that it has complete control over the management of its natural resources, of which wild game is included. Accordingly, the state contends that because it could deny the right of Herscher to use these natural resources, due process of law need not be

---

10. *See also* McQuillin on Municipal Corporations, §§ 22–23, page 232 (3d ed. 1969) which notes:

> [t]he general rule is that when a former provision is included in the same words in a revised law, the purpose is to continue the existence of the former provision, and not to make it operate as an original act to take effect from the date of the revised law; the revision does not have the effect of breaking the continuity of those provisions which were in force before it was made.

11. Alaska Const. art. I, § 7 provides in part: "No person shall be deprived of life, liberty, or property, without due process of law."

U.S.Const. amend. XIV, § 1 provides in part: "No state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

complied with in taking away his right to these resources under a license granted by the state.

It is true that the state has the right to direct the use of its natural resources, including fish and game.[12] We recognize that there is a difference between the state's plenary control over the natural resources and the taking away of a formally granted state license. The state's power over natural resources is such that it could entirely eliminate the role of hunting guides, and no problem of due process would arise.

■ However, when the state decides to permit the harvesting of its fish and game, and in doing so permits the issuance of hunting guide licenses, then problems of due process do arise when the individual, rather than the group as a whole, is affected. At that point the consideration is whether the state's procedures in taking the property right in the individual's guide license comported with due process requirements.

■ In such a situation the state, as trustee of the natural resources for the benefit of its citizens, must obey the Fourteenth Amendment to the Federal Constitution, and Article I, § 7 of the State Constitution, where the obligations to afford due process are found. See *Hicklin v. Orbeck*, 565 P.2d 159 at 165 (n. 10) (Alaska 1977). In addition, art. I, § 1 of the Alaska Constitution provides that:

. . . all persons have a natural right to life, liberty, the pursuit of happiness, and the enjoyment of the rewards of their own industry, . . .

It would be inconsistent with the spirit of this constitutional provision to take away Herscher's right to follow his chosen pursuit as a hunting guide without affording him due process of law. We conclude that a guide license is a sufficient property interest to qualify for the protection of due process.

■ Herscher argues that the procedures and standards used by the board were not specific enough to satisfy the requirement of due process. A guide license is subject to revocation under AS 08.54.200(b) if:

(b) After a hearing . . . the board finds that the licensee

(1) engaged in unethical activity, unsafe activity, or activity which adversely affects the natural resources of the state when such activity is unrelated to the legal and legitimate purposes of the contract hunt; or

(2) violated a provision of a federal or state sport fish, game, or guide statute or regulation.

It is Herscher's contention that since no time limitations are placed on the forbidden conduct, the board has the power to revoke a license for a "petty paper infraction" several years after its occurrence. But Herscher fails to make any showing as to how he was prejudiced by the lack of time limitations, and therefore, does not make out a case for denial of any constitutional right.

Herscher asserts lack of due process in that the board failed to adopt regulations under AS 08.54.050 which provides:

The board shall adopt procedural and substantive regulations, under the Administrative Procedure Act (AS 44.62), required by this chapter or reasonably necessary for its administration.

Herscher claims that by reason of the failure of the board to adopt regulations, he was subject to having his license revoked without adequate notice of the precise conduct which would call for such a penalty and was, therefore, subject to license revocation under a subjective standard which failed to give him the adequate type of notice of forbidden conduct which due process requires.

■ AS 08.54.050 requires the adoption of regulations when "reasonably necessary for . . . [the] administra-

---

12. "The legislature shall provide for the utilization, development, and conservation of all natural resources belonging to the State, including land and waters, for the maximum benefit of its people." Alaska Const. art. VIII, § 2.

tion" of Chapter 54 which deals with guides. This legislative requirement would be violated if the board failed to act when regulations were "reasonably necessary." We have examined the statute, the accusations against Herscher, and the board's findings, and find that the prohibited conduct was sufficiently set forth and determined according to objective standards and, therefore, further regulations by the board were not required. It was clearly alleged in the accusation that Herscher had violated specific regulations of the Board of Fish and Game in a particular way. Herscher was thus notified with particularity what prohibited conduct he was charged with, which would constitute the basis for revocation of his license if the facts in the accusation were found to be true, as they were. There was no denial of due process because of the failure of the board to adopt regulations relating to guides.

Herscher argues that charging him with "unethical or unsafe" activity failed to give him adequate notice of prohibited conduct, because these words are unconstitutionally vague, and therefore, that the board's finding that he had engaged in "unethical and unsafe" activities was repugnant to the requirements of due process of law.

■ We need not, however, reach this question. The board found that Herscher had committed two violations of the Fish and Game Board regulations, relating to transferring a bear from an unregistered camp, and transporting a bear hide without the skull. These findings were supported by adequate evidence at the administrative hearing, and constituted grounds for license revocation under AS 08.54.200(b)(2). Therefore, a valid basis existed for revocation of Herscher's license, entirely apart from the question of whether he had engaged in an "unethical" or "unsafe" activity. *Alaska Board of Fish and Game v. Loesche*, 537 P.2d 1122, 1126–1127 (Alaska 1975).

■ However, the Board's decision to revoke Herscher's license for a period of three years was based, not only upon the two violations of fish and game regulations, but also upon the Board's finding that Herscher's escape in his airplane from Trooper Rotermund constituted unsafe and unethical activity under AS 16.50.205(1). As we have stated, we do not pass upon the question raised by Herscher as to this matter. This means that we cannot be certain that the Board's decision to revoke Herscher's license for three years would have been the same had there been no finding as to unsafe and unethical activity. This case must be remanded to the Guide Licensing and Control Board for a determination of this question.

AS 08.54.110 sets out the qualifications for a registered guide, as follows:

*Qualifications for registered guide license.* A person is entitled to be licensed as a registered guide if he

(1) is 21 years of age or more;

(2) is a resident of the state and maintains a permanent place of abode in the state;

(3) has practical field experience in the handling of firearms, hunting, judging trophies, field preparation of trophies, first aid and photography;

(4) is familiar with the terrain and transportation problems in the district for which the license is requested;

(5) has passed the qualification examination prepared and administered by the board;

(6) has demonstrated to the board sufficient standards of competence and ethical conduct and has not been convicted of a crime involving moral turpitude;

(7) has legally hunted in the state for all or part of each of five years in a manner directly contributing to his experience and competency as a guide;

(8) has been licensed as and performed the services of an assistant guide in the state for a part of each of three years;

(9) submits a written recommendation to the board from a registered guide for whom the applicant has worked;

(10) is capable of performing the physical duties associated with guiding activities;

(11) has been favorably recommended in writing by two hunters that he has guided or assisted in guiding during each year of his three years as an assistant guide, whose recommendations have been solicited by the board from a list provided by the applicant;

(12) meets additional qualifications which the board may require.

Herscher points to subparagraph (6) of the above statute, which requires that an applicant for a guide license "has demonstrated to the board sufficient standards of competence and ethical conduct and has not been convicted of a crime involving moral turpitude." He then argues that AS 08.54.200(b), which permits revocation of a license for engaging in unethical or unsafe activity or for violating fish, game or guide statutes or regulations, has no rational connection to the guide's competence as set forth in subparagraph (6) of AS 08.54.110 quoted above.

We believe that Herscher misconceives the "rational connection" requirement. He relies upon the case of *Schware v. Board of Bar Examiners of the State of New Mexico*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). In that case the Supreme Court of the United States held that high standards for admission such as good moral character and proficiency in the law required by the state before admitting one to practice law, must have a rational connection with the appellant's fitness to practice law.

We fail to understand how this can support Herscher's thesis. The question presented here by him is not whether the qualifications for becoming a registered guide have a rational connection with the applicant's fitness to engage in the occupation of guiding. Instead, he poses the question as to whether, once one has met all the qualifications to become a guide, and has been licensed, there then must be a rational connection between (a) the qualifications for becoming a guide, and (b) actions on the guide's part which may result in revocation of his license. Herscher argues that "infractions" involving violation of fish and

game regulations relating, e. g., to obtaining a sealing certificate for a bear hide and skull and neglecting to register a camp, do not involve "moral turpitude" as that term is used in AS 08.54.110(6) relating to qualifications to be licensed as a guide, and therefore, in some way there is a violation of due process.

 There is no requirement under due process that there must exist a rational connection between all of the several qualifications or standards one must meet to become a guide, and the various laws and regulations that must be obeyed if one is to retain his guide license. The "rational connection" is between the violations and one's competence, not to be licensed as a guide, but to continue in the occupation of guiding.

 The fish and game resources are permitted to be harvested, but at the same time must be conserved to avoid depletion and extinction. A guide, more than any other game hunter, should be expected to realize this concept, and direct his actions and the actions of the hunters he guides so as to accomplish the balance the Board of Fish and Game is attempting to reach in harmonizing reasonable harvesting of the game resources and their conservation. If the guide violates the statute and regulations of the Board of Fish and Game, he has demonstrated his failure to accomplish these joint objectives, and, therefore, shows his incompetence to continue in the occupation of guiding hunters of Alaska's game resources. Certainly, there is a rational connection between one's competence to continue as a guide and a violation of fish and game regulations and statutes designed to conserve these resources of the state. Herscher's argument on the "rational connection" requirement is without merit.

Herscher's final argument is that regulation 5 AAC 81.070(b)(5) denies him the equal protection of the laws in contravention of the Fourteenth Amendment to the United States Constitution [13] and art. I, § 1

13. U.S.Const. amend. XIV provides in part: "No state shall . . . deny to any person within its jurisdiction equal protection of the laws."

of the Alaska Constitution.[14] That regulation provides:

> (5) in Game Management Units 9 and 10, brown or grizzly bear or parts of brown or grizzly bear taken on guided hunts may not be transported by aircraft except between registered camps or between a registered camp and an airport or between airports; . . .

Herscher argues that there is no valid basis for placing such a restriction on hunting with aircraft, and not also placing the same restriction on hunters on foot or with land vehicles.

The standard to be applied in determining the equal protection issue in this case is what is termed the "rational basis test." The test is this:

> Under the rational basis test, in order for a classification to survive judicial scrutiny, the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' [15]

A hunter of bear using an airplane is in a different class from the hunter on foot or one using a land vehicle. The great mobility of aircraft allows the hunter to spot, track, kill and transport the bear with such great efficiency that game violations in this class are extremely difficult to apprehend. It was for the purpose of enforcing game regulations and preventing an outright depletion of the bear population that the regulation in question was adopted.

 If a hunter by airplane is forbidden to transport his kill by aircraft except as between registered camps, or between a registered camp and an airport, or between airports, then the Department of Fish and Game law enforcement officials [16] have a much better opportunity of apprehending violators than if this regulation did not exist. Since the same problem in enforcement with respect to hunters on foot or using land vehicles is not nearly so great as with hunters using aircraft, the regulation as to transporting bear by aircraft is a reasonable and not an arbitrary requirement. It rests upon a ground of difference between the two classes of hunters having a fair and substantial relation to the object of the regulation—which is to protect the state's game resources from becoming depleted or even extinct. There is no violation of constitutional equal protection requirements here.

At the hearing before the board, Herscher invoked his Fifth Amendment rights and refused to answer certain questions. The hearing officer found that this action on Herscher's part discredited the testimony he did give. On appeal, the superior court remanded the case to the board to determine whether there was sufficient evidence on which the board's action could be based without drawing any inferences on Herscher's assertion of his Fifth Amendment rights. The hearing officer then determined that there was such evidence, and that the testimony given at the board hearing, reconsidered without regard to Herscher's statements, was sufficient to sustain the board's findings that Herscher was in violation of the statutes and regulations we have discussed.

By way of cross-appeal, the state alleges as error the action of the superior court in ordering the board to reconsider the case against Herscher without regard to his assertion of his right to remain silent. The state concedes that Herscher could invoke his Fifth Amendment rights in a disciplinary proceeding. But it argues, nevertheless, that in such a proceeding an inference of guilt may be drawn from the refusal to answer questions.

---

**14.** Alaska Const. art. I, § 1 provides in part: "This constitution is dedicated to the principles . . . that all persons are equal and entitled to equal rights, opportunities, and protection under the law . . . .."

**15.** *Isakson v. Rickey*, 550 P.2d 359, 362 (Alaska 1976) (footnote omitted).

**16.** The law enforcement officials of the Department of Fish and Game are now Alaska State Troopers under the Department of Public Safety.

We noted in *Loesche*, that "substantial interests other than criminality" are involved in hearings conducted by the board under circumstances such as the ones presented here. But this does not necessarily control as to whether the imposition of a sanction as a penalty for remaining silent is permissible. This question is controlled by *Spevack v. Klein*, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). In that case Spevack, in the course of a disbarment proceeding, asserted his right to remain silent. The New York courts found the privilege against self-incrimination not to be applicable. The United States Supreme Court reversed, and stated:

> We said in *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653:
>
> "The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement—the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence."
>
> In this context "penalty" is not restricted to fine or imprisonment. It means . . . the imposition of any sanction which makes assertion of the Fifth Amendment privilege "costly." [17]

 To allow the board to draw an inference of guilt from Herscher's assertion of his right not to incriminate himself would be to penalize him within the meaning of *Spevack*. Therefore, the superior court's order requiring the board to reconsider the case against Herscher without regard to his assertion of his Fifth Amendment rights was correct.

This case is remanded to the superior court for further remand to the Guide Licensing and Control Board. The Board shall make a determination of the question as to whether its decision to revoke Herscher's license for three years would have been the same had there been no finding that Herscher's activities regarding Trooper Ro-

termund constituted unethical and unsafe activity.

The Board shall certify its decision on this point to the superior court for further certification to this court. In the meantime, this court retains jurisdiction of this case.

---

17. 385 U.S. at 514–515, 87 S.Ct. at 628, 17 L.Ed.2d at 577 (footnotes and citations omitted).