**UNION OIL COMPANY OF CALIFORNIA and Marathon Oil Company, Appellants,**

v.

**STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Appellees.**

**No. 2650.**

Supreme Court of Alaska.

Feb. 10, 1978.

---

J. W. Sedwick and D. A. Burr, of Burr, Pease & Kurtz, Inc., Anchorage, for appellants.

Rodger W. Pegues, Asst. Atty. Gen., Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR and BURKE, Justices, and DIMOND, Justice Pro Tem.

## OPINION

CONNOR, Justice.

This case concerns an oil well discovery royalty which has been the subject of litigation for about 12 years. The case is before us for the second time on appeal.

Appellants leased certain state lands for purposes of oil and gas exploration and related activities pursuant to the terms of State Lease ADL 17594 dated March 1, 1962. Union, as operator for both appellants, drilled a well on the leased land known as Grayling No. IA well.[1] The well encountered hydrocarbon deposits, and Union applied for discovery well certification on November 15, 1965. Union demonstrated that the well produced oil in commercial quantities in a potential test observed by a state representative on November 6, 7, and 8, 1965. A discovery date of October 24, 1965, and oil production in commercial quantities have been established, and there is no dispute about those facts. Certification was denied on January 26, 1966, because Department of Natural Resources officials found that adequate information to establish that the Grayling No. IA well is located on a separate geologic structure was not presented within 90 days after the date of the potential test.

In a letter dated January 21, 1966, the Alaska Oil and Gas Conservation Commission transmitted its findings concerning the application to the Director, Division of Lands, who issued a decision dated January 26, 1966, denying discovery well certification. Union filed a document styled a "Petition for Reconsideration and Interpretation," dated February 4, 1966. Thereafter, on October 31, 1968, the Commissioner of Natural Resources issued a decision granting Union 60 days in which to submit more information.[2] Union submitted more information on December 30, 1968, and requested a hearing, which was held before the commissioner on April 17, 1970. The director's decision of January 26, 1966, was affirmed in the commissioner's decision of October 7, 1970.

Union sought review in the superior court, which remanded the matter to the commissioner for a new decision, including a statement of the basis for the decision. The commissioner responded by issuing a decision dated February 17, 1972, denying discovery well certification because insufficient information was submitted, within the 90 day period prescribed by 11 AAC § 505.-744, to determine whether or not the Grayling No. IA well was on a separate geologic structure, and because evidence submitted thereafter could not be considered. The decision was filed with the superior court March 13, 1972, and the appellants sought review in the superior court on April 12, 1972, only to have the superior court dismiss the appeal on May 29, 1973, on the ground that it lacked jurisdiction.

Union then appealed to this court. We reversed and remanded the matter for further consideration. *See Union Oil Co. of Cal. v. State Dept. of Nat. Resources,* 526 P.2d 1357 (Alaska 1974). After our remand, Union requested the superior court to remand the matter to the commissioner with directions to consider all the evidence. The state opposed the motion. The court below did not merely deny the motion to remand and affirm the administrative decision. Rather, it expressly concluded (1) that the commissioner could not legally consider the after-acquired evidence offered by appellants, (2) that the commissioner did not grant them a right to submit after-acquired data, and (3) that the original (director's) decision denying discovery royalty certification was clearly sustained by the evidence. From that decision, entered July 31, 1975, Union has again appealed.

Union believed that the commissioner's decision granting reconsideration in 1968 would permit presentation and consideration of evidence discovered subsequent to

---

1. Appellants are co-lessees of the tract. Union is the sole operator on the tract. For convenience we will refer to appellants jointly as "Union."

2. The delay of more than two and one-half years, and the entry into the case of the Commissioner of Natural Resources, the superior of the Director of the Division of Lands, are unexplained in the record.

the original 1966 decision. At the 1970 hearing, the commissioner told them that he would only consider information filed within the original 90-day period in 1965 and 1966, and any inferences and conclusions the expert witnesses were able to draw therefrom without the benefit of subsequently developed evidence. Union's counsel objected. Much of the evidence Union presented was new matter developed since the 90-day period. At the end of the hearing, Union offered to submit, and the commissioner agreed to accept, a memorandum outlining Union's position. The memorandum was filed. It did not persuade the commissioner to change his position.

The applicable law at the time this litigation arose was summarized in our earlier opinion in *Union Oil Co. of Cal. v. State Dept. of Nat. Resources*, 526 P.2d 1357, 1358, n. 1 (Alaska 1974):

"Holders of oil and gas leases from the State of Alaska normally pay a royalty of 12½ percent of the value of oil and gas they extract. AS 38.05.180(a). But until 1967 a lease holder who drilled and made the first discovery of oil or gas in commercial quantities in a geologic structure could be rewarded by paying a discovery royalty of only five percent for the first ten years, after which the normal rate was applicable. By legislative amendments in 1967 and 1969 the discovery royalty system was curtailed and finally abolished. Section 2, Chapter 91, SLA 1967; Section 1, Chapter 65, SLA 1969."

The pertinent portion of AS 38.05.180(a) is:

"[t]he holder of a lease who drills and makes the first discovery of oil or gas in commercial quantities in a geologic structure shall pay a royalty on all production under the lease of *five per cent for 10* years following the date of discovery and thereafter the royalty rate shall be not less than 12½ per cent."

The implementing regulations were 11 AAC § 505.74, *et seq.* They specified the procedures for proving the three elements required by the statute for discovery well certification: date of discovery, commercial

quantities, and geologic structure. Only the last of those three criteria is disputed here. The relevant regulation is 11 AAC § 505.744:

"505.744 Establishment of Geologic Structure.

To establish the geologic structure from which the oil and /or gas can be produced, the operator must furnish pertinent data to the Committee which will enable it to determine the geologic structure from which the oil and/or gas is being produced. This may include but is not limited to: geophysical data, total depth, casing records, perforation data, electric logs, drilling and mud logs, core analyses, sample cuttings and sample logs and the operator's interpretation thereof, together with any other records and interpretations the operator deems pertinent. This data must be supplied within 90 days after the date of the potential test as required in Section 505.743. All such data submitted shall be held confidential for a period of 24 months unless written authorization from the operator for the release of same is secured."

The two main issues on appeal stated by Union are (1) whether the 90-day limitation for the submission of evidence regarding geologic structures set forth in 11 AAC § 505.744 is invalid and unenforceable against Union, as inconsistent with the policy expressed in AS 38.05.180(a), and (2) whether the Commissioner of Natural Resources should be required to consider all of the evidence submitted by appellants, in reaching decision on appellants' application.

As to the first main issue, Union challenges the administrative regulation in two distinct ways: that it is contrary to the statute it purports to implement, and that it unconstitutionally impairs the obligation of Union's contract, *i. e.,* the lease, with the state. In response, the state argues that we should not consider these questions because they are raised for the first time on appeal. For analytical purposes, therefore, it is necessary to deal with the distinct issues presented by separating this opinion into several parts.

## I

The first question we must grapple with is whether the validity of the administrative regulation is properly before us.

Union argues that, for the first few years of this protracted litigation, it thought the state would be willing to consider new evidence concerning the geologic structure, despite the 90 day time limit of the regulation. It cannot be expected to have challenged the validity of the regulation at that time, says Union, because there was no reason to do so.

Union claims that, as soon as it realized in 1970, that the state was not going to consider any late-filed evidence, it began asserting the invalidity of 11 AAC § 505.-744. The portions of the record it cites, however, also lend themselves to the interpretation that Union was instead contending that the state officials misinterpreted their own regulations. Union's initial petition to the superior court cites the regulations, and says that the state has "not proceeded in the manner required by law. . . ." The supporting memorandum nowhere mentions the regulation, either by name or number. In response, the state discussed the regulations at length and set them forth in full in its memorandum. Union's reply memorandum in the superior court is certainly susceptible to the interpretation that it calls into question the validity of the regulations. But, once again, it does not cite the regulations. The question remains whether it was sufficient to put the state on notice to defend its regulations. The state argues that it was not.

The second set of appeal papers to the superior court, after the commissioner had entered findings pursuant to the first remand, was almost identical to the first. Union's pretrial memorandum at that time stated explicitly that 11 AAC § 505.744 governed the appeal. Although Union did not clearly state the point, the state's pretrial memorandum on that appeal said that the reasonableness—and by implication, therefore, the validity—of the regulation was at issue.

After an appeal to this court on issues not relevant to the instant appeal, the case went back to superior court, and this time Union's papers quite clearly questioned the validity of the regulation on the ground that it was inconsistent with the statute. This, the state says, was too late.

One thing is clear: the superior court never decided this issue. The superior court's first decision was a remand for a statement of reasons of the administrative disposition. Its second decision was a dismissal for want of jurisdiction, which we subsequently determined to be in error. Its third decision, from which the instant appeal is taken, assumed the validity of the regulation without discussion, in granting a final judgment on the merits in favor of the state.

What emerges from a review of the procedural tangles in this case is that the reasonableness of the 90-day limit on submitting data has never been the subject of a hearing either before the agency or the superior court. While the state urges that it was incumbent upon Union to raise the question clearly, and at an earlier stage of the proceedings, there are certain procedural quirks in this case which are still unexplained.

To recapitulate the earlier discussion, on February 14, 1966, Union submitted its petition for reconsideration to the Division of Lands. Nothing happened for two and one-half years. Then, on October 31, 1968, the petition was granted, not by the Division of Lands, but by the commissioner. It is still unexplained to this day why the commissioner entered the case, and why there was such a long delay in acting on the petition. In granting the petition the commissioner ruled that the director's decision was proper on the basis of the available information, but he permitted Union to submit "supporting information." Union did submit such information.

On February 26, 1970, the commissioner granted Union's request for a public hearing and, *for the first time,* "reminded" Union that he was restricted in his considera-

tion to data timely filed in support of the original application, *i. e.*, within 90 days from the test of well potential. Union's position is that on October 31, 1968, the commissioner must have intended to permit Union to present data developed after the 90-day period. Otherwise, the commissioner's action would not make any logical sense.

It is noteworthy that the limitation to data developed within the 90-day period appears for the first time in the order of February 26, 1970. This was more than a year after Union submitted the data on December 30, 1968.

■ Given these procedural peculiarities, we think there is a distinct probability that Union was lulled into not attacking the validity of the regulation at an earlier time in the proceedings. We conclude that its attack on the reasonableness of the 90-day limit may be validly raised in the present appeal.

## II

Union also assails the regulation on the ground that it violates the constitutional prohibition against impairing the obligation of contracts. Alaska Constitution, art. I, § 15; United States Constitution, art. 1, § 10. However, unlike the question treated in Part I of this opinion, we find no mention of the contract clause in the record until the statement of the points on appeal.[3] We will not address the contract clause question further.

Union also asserts that the conduct of the state amounts to a denial of due process of law. Not only was this claim not raised below, but it is argued for the first time on appeal only in the reply brief. In view of this, and our further disposition of this case, we will not consider the due process question further.

## III

We now take up the question of whether the regulation, 11 AAC § 505.744, conflicts with AS 38.05.180(a).

■ Union argues that the 90-day period for submission of data is unreasonable, and that it is not necessary to the effectuation of the discovery royalty statute. These are, of course, matters into which we will inquire. *Kelly v. Zamarello,* 486 P.2d 906, 911 (Alaska 1971); AS 44.62.030.[4] However, as the state points out, an administrative regulation must be accorded a presumption of validity, and the challenger of the regulation must demonstrate its invalidity. *Kingery v. Chapple,* 504 P.2d 831, 834–35 (Alaska 1972); *United States v. Ekberg,* 291 F.2d 913, 921 (8th Cir. 1961), *cert. denied,* 368 U.S. 920, 82 S.Ct. 242, 7 L.Ed.2d 135 (1961). On the face of the statute and regulation, we do not find anything about the 90-day period which is glaringly unreasonable or arbitrary. This does not end our inquiry, however.

■ Union contends that the 90 days set by the regulation is unrealistically and unreasonably short in light of the circumstances of this case. It asserts that the determination of the boundaries of a given geologic structure requires the gathering of large amounts of field data and its analysis and collation by experts. The decision may need to await the drilling of new wells located between the well in question and prior ones. Union asserts that 90 days is a ridiculously short period for gathering, processing, evaluating, and presenting in a coherent form such complicated information. Union concludes that this should invalidate the regulation because (1) 90 days is arbitrary and unreasonable when compared to the physical realities of the industry; (2) it is arbitrary and unreasonable because it requires a final decision long before all the relevant evidence is available, and in this

---

3. One of Union's memoranda in the superior court complains that the regulation was enacted subsequent to the signing of Union's lease agreement with the state, but there is no mention of the contract clause. We deem this insufficient to raise this constitutional claim.

4. AS 44.62.030 provides in part: ". . . no regulation adopted is valid or effective unless consistent with the statute and reasonably necessary to carry out the purpose of the statute."

case required the decision maker to ignore relevant evidence which was available at the time the decision was made, but was adduced after the 90-day period; and (3) the 90-day limit would effectively prohibit nearly anyone from receiving discovery well certification, thereby contravening the statute in effect, if not in language.

Unfortunately, the procedural posture of this case is such that Union has never presented evidence in support of these assertions, either to the administrative agency or to the superior court. The record contains the complete transcript of the administrative hearing. Data concerning geologic structures was there presented by Union in making its case for discovery well certification on the merits, not in raising a challenge to this regulation. It appears to us that the data is highly complex and not susceptible to lay comprehension without expert guidance. It is equally beyond lay comprehension, based on this record, whether 90 days is an unreasonable length of time for the submission of the information. The experts testified to what they concluded from the data, not to how long they should have had to reasonably collect the data.

We are impressed with Union's thesis that the substantive right to a discovery royalty should carry with it a reasonable opportunity to qualify for the royalty. Whether 90 days is a reasonable time is something not answered by this record. On this state of the record we have concluded that a remand to the agency is necessary. Upon remand Union should be given the opportunity to demonstrate the practical unreasonableness of the 90-day limitation. The determination of that question should be made initially by the agency, not the superior court. Presumably the evidence which will be presented is technically complex and abstruse, and is peculiarly within agency expertise.[5]

In the event that the agency is persuaded that the 90-day limitation, as applied to Union in this case, was unreasonable, it should then proceed to receive additional data and rule upon the basis of all data submitted.[6]

## IV

■ We now address the question whether the commissioner had power to consider new evidence, which was proffered by Union but rejected by the commissioner on the ground that Union should be limited to the record it made initially before the Division of Lands.

As we view the question, it is not whether the commissioner should routinely grant *de novo* hearings on all cases in which he reviews the decisions of one of the agencies under his jurisdiction. The real question is whether in particular cases, such as the one at bar, the commissioner has authority to consider additional evidence. Our answer is that he does have that authority and that he may, in his discretion, consider such additional evidence. As our further discussion will show, this should not be taken as establishing some sweeping principle of administrative law but merely a doctrine of limited application.

The state urges that the commissioner should not consider information not contained in the original agency record for several reasons. First, there is a danger of rendering agency proceedings merely pre-

5. *See, e. g., United States v. L. A. Tucker Truck Lines,* 344 U.S. 33, 36–37, 73 S.Ct. 67, 97 L.Ed. 54 (1952).

6. The state argues that under 11 AAC § 505.743 Union had one year from the completion of the Grayling No. IA well within which to conduct a potential test of the discovery zone, plus 90 days thereafter, under 11 AAC § 505.744, within which to supply the pertinent data to the Division of Lands. Thus, the state argues, Union really had 15 months within which to do its geologic work. Union counters this by stating that it could not, as a practical matter, make use of the one-year period. The well was drilled from a floating barge, and oil sands were encountered on October 24, 1965. With the onset of winter and the prospect of both the forceful Cook Inlet tidal currents and the winter ice floes, Union contends that it could not wait the entire year to conduct the tests. It proceeded with the tests in early November, 1965.

We do not pass upon this question. It is the very type of matter that should be determined by the agency in the first instance under our remand.

liminary in nature, thus frustrating the sound goal of procedural finality. Second, the commissioner should reply upon the expertise of his subordinates, and should not undo that expertise by second-guessing them. Third, time limits for the conduct of the government's business must be established and adhered to.

All of these goals would have considerable force in a normal quasi-judicial determination, or in dealing with fact situations which, by their inherent nature, will, change with the passage of time. For example, in the regulation of public utilities and carriers the decision whether to reopen the administrative record is normally within the discretion of the agency. The agency may take into account the need for finality. The mere existence of additional relevant evidence does not require that the record be reopened. *Bowman Transportation, Inc. v. Arkansas Best-Freight System, Inc.*, 419 U.S. 281, 294–96, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *United States v. I.C.C.*, 396 U.S. 491, 520–21, 90 S.Ct. 708, 24 L.Ed.2d 700 (1970).[7]

There is a countervailing principle. In *Mulloy v. United States*, 398 U.S. 410, 416, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), the court held that where non-frivolous new evidence was presented by a draft registrant, it was an abuse of discretion for a local draft board to decline to reopen a case, even though the regulation said that the board "may" reopen such a case. In *Rush v. Gardner*, 273 F.Supp. 753 (N.D.Ga.1967) a social security case, it was held not to be an abuse of discretion when the agency re-

opened the case to hear new evidence adverse to the claimant.[8]

Professor Davis has succinctly stated the problem in these words:

"When statutes are silent and legislative intent unclear, agencies and reviewing courts must work out the practices and the limits on reopening. . . . Usually the search for a basic principle to guide reopening is futile; the results usually must reflect the needs that are unique to each administrative task. Factors to be weighed are the advantages of repose, the desire for stability, the importance of administrative freedom to reformulate policy, the extent of party reliance upon the first decision, the degree of care or haste in making the earlier decision, the general equities of each problem." K. C. Davis, *Administrative Law*, § 18.09, at 607 (1958).

In complexity the case at bar falls somewhere in between one man's draft status or social security benefits, and the economics of the motor carrier business in a large region of the country. Many of the factors mentioned by Professor Davis seem to point in favor of the commissioner considering data obtained after the 90-day period. We are here dealing with physical facts which in essence do not change, but about which more can perhaps be learned after the 90-day period has elapsed and more reliable information comes to light. This is quite unlike the economic data in utility rate regulation cases, the substance of which necessarily changes with the passage of time. Nor are we dealing with a subject

---

7. These were highly complex rail and motor carrier certification proceedings. In *Bowman* the hearings consumed 150 days in 1966 and 1967, briefing was completed in 1969, and the decision was rendered at the end of 1971. To reopen the record to consider evidence of changed conditions would mean no finality would ever be achieved, as that new evidence might well become stale before decision could be reached.

Even the *Bowman* rule is not an invariable one. *See Atchison, T. & S. F. R. Co. v. United States*, 284 U.S. 248, 52 S.Ct. 146, 76 L.Ed. 273 (1932), where briefing concerning economic conditions was completed in 1928, and a deci-

sion was rendered in 1931. The court took notice of the intervening economic depression.

8. "As great is the desire to terminate this matter for the sake of the parties and the court and as reluctant is the impulse to prolong this legal investigation, the ultimate goal must be the true facts regarding the claimant's complete financial status at the time in question. Obviously, neither party will suffer from this regrettable delay. Accordingly, the matter is further remanded for hearing, after adequate notice, on the full issue of claimant's standing to obtain the benefits in question." *Rush v. Gardner*, *supra*, at 756.

which is litigated in large numbers of cases. On the contrary, since the discovery royalty has been abolished for several years, it is not a recurring question. Given Union's substantive right to a discovery royalty, the tortuous procedural saga which the record exposes, the enormous delays which have resulted, and the consideration that a case this tangled will not, it is hoped, soon recur, there seems to be no sound reason why the commissioner could not entertain the submission of Union's additional data. Alternatively, the commissioner, in an effort to get at the truth of the matter, could remand to the Division of Lands for the submission of the additional data.

Because the discretion to do these things lies initially with the Commissioner of Natural Resources, and not with us, and that discretion apparently was never exercised, we shall remand these questions to the commissioner for his determination.[9]

REVERSED and REMANDED.

---

9. In the circumstances of this case, no purpose other than delay would be served by remanding to the superior court for further remand to the commissioner. We, therefore, take the unusual step of bypassing the superior court in our remand.