CHAMPION OIL COMPANY, INC., an
Alaska Corporation, Appellant,

v.

Charles F. HERBERT, Commissioner and
Thomas E. Kelly, Former Commissioner,
Department of Natural Resources, F. J.
Keenan, Director of Division of Lands,
and the State of Alaska, Appellees.

No. 3385.

Supreme Court of Alaska.

May 5, 1978.

Ty R. Settles, Anchorage, for appellant.

Jeffrey B. Lowenfels, Asst. Atty. Gen.,
Anchorage, and Avrum M. Gross, Atty.
Gen., Juneau, for appellees.

Before BOOCHEVER, Chief Justice, RA-
BINOWITZ, CONNOR and MATTHEWS,
Justices, and DIMOND, Justice Pro Tem.

OPINION

RABINOWITZ, Justice.

This appeal has its genesis in the 23rd
Competitive Oil and Gas Lease Sale which
was conducted by the State of Alaska in
September 1969.[1] In relevant part, the per-
tinent notice of sale provided:

> A lease will be awarded on each tract
> to the responsible qualified bidder offer-
> ing the highest cash bonus for that tract
> *unless all bids on the tract are rejected or*

---

1. A previous appeal in this case did not call for
decision on the merits; only procedural ques-
tions were addressed in *Champion Oil Co., Inc.
v. Herbert,* 552 P.2d 670 (Alaska 1976).

*a preference right is exercised.* If a lease is not issued to a bidder whose bid is retained, the lands in the tract involved will be held and be subject to nomination and offering at a later sale.

. . . . .

(b) . . . The bid . . . shall be accompanied by one or more cashier's or certified checks drawn on any solvent bank in the United States, money order, or cash or any combination thereof in a total amount of at least 20 percent (20%) of the amount of the bid. (emphasis supplied)

Pursuant to this notice, Champion Oil submitted bid proposals on all of the tracts involved in the 23rd lease sale in the amount of "one dollar or more." Each bid envelope submitted by Champion contained the sum of 20 cents, representing the required 20% deposit. On seven tracts Champion Oil's bids were the high bids, as no other bids were received on these tracts.[2] Subsequently, Champion Oil's bids were rejected as not being "in the best interest of the State of Alaska."

2. In all 1,102 bids were submitted on the 179 tracts involved in the sale which encompassed 450,858.47 acres of land. The average bid per tract was $5,029,154.13 and the average bid per acre was $1,996.68.

3. The earlier procedural history of this case is recounted in this court's previous decision, *Champion Oil Co., Inc. v. Herbert,* 552 P.2d 670, 671 (Alaska 1976).

4. AS 38.05.180(a) provides: All tide and submerged lands, mental health lands, school lands, and university lands shall be leased by competitive bidding, and whenever oil or gas [is] discovered in commercial quantities, the commissioner shall determine the extent of the area of lands in addition to tide, submerged, mental health lands, school, or university lands in the same general area of the discovery well which, by reason of the discovery, the commissioner reasonably believes to be capable of producing oil or gas, and the additional lands shall be leased to the highest responsible qualified bidder by competitive bidding under general regulations, in units of not exceeding 2,560 acres (except that tide and submerged lands shall be leased in units of not exceeding 5,760 acres), which shall be as nearly compact in form as possible, upon the payment by the lessee of such bonus as may be accepted by the commissioner and of such royalty as may be fixed in the lease which shall not be less than

Champion Oil then instituted suit in superior court claiming it was entitled to be awarded leases on the seven tracts.[3] The State of Alaska moved for summary judgment which was granted by the superior court. In its memorandum decision, the superior court concluded:

[T]here appears to be a rational basis for rejecting the bids on the basis that the bids were not in the best interest of the State. *Kelly v. Zamarello,* 486 P.2d 906 (Alaska 1971).

There being no genuine issue of fact to be decided,

IT IS ORDERED that the decision of the Commissioner of Natural Resources and the Director of Division of Lands, to reject the plaintiffs' bids, is affirmed.

Champion Oil brings this appeal from the superior court's grant of summary judgment to the State of Alaska. The primary contention advanced by Champion Oil, in support of its overall position that entry of summary judgment was inappropriate, is that AS 38.05.180 [4] embodies an impermissi-

$12\frac{1}{2}$ per cent in amount or value of the production removed or sold from the lease. All lands other than those above provided to be leased by competitive bidding may be leased competitively or noncompetitively as determined by the commissioner to be in the best interests of the state. Noncompetitive leases shall be issued in units of not exceeding 2,560 acres in any one lease. Noncompetitive leases shall be conditioned upon the payment by the lessee of a royalty of $12\frac{1}{2}$ per cent in amount or value of the production removed or sold from the lease. Competitive leases issued under this subsection shall be for 10 years except that in the Cook Inlet sedimentary basin, leases shall be for a primary term of not more than 10 years and not less than five years at the discretion of the commissioner, and shall continue so long thereafter as oil or gas is produced in paying quantities. Noncompetitive leases issued under this subsection shall be for a primary term of five years and shall continue so long thereafter as oil or gas is produced in paying quantities. If drilling has commenced on the expiration date of the primary term of the lease and is continued with reasonable diligence, such operations to include redrilling, sidetracking or other means necessary to reach the originally proposed bottom hole location, the lease shall continue in effect until 90 days after drilling has ceased and for so long thereafter as oil or gas is produced in paying quantities. If all or part of

bly overbroad delegation of legislative authority to the Commissioner of Natural Resources. Our study of this specification of error has convinced us that the appeal is devoid of merit. We thus affirm the superior court's grant of summary judgment in favor of the State of Alaska.

■ It is well established that the burden is placed on the party moving for summary judgment to demonstrate the absence of any genuine issues of material fact before summary judgment is appropriate. *See Alaska Rent-a-Car, Inc. v. Ford Motor Co.*, 526 P.2d 1136, 1138 (Alaska 1974). The party opposing the motion is not required to show that it will prevail at trial, but it must demonstrate that there exists a genuine issue of material fact to be litigated. *Id.* at 1139. Viewing the facts most favorably to Champion Oil, study of the record reveals an absence of any genuine issues of material fact.[5] It is uncontested that Champion Oil was the apparent high bidder on the seven tracts in question. It is also uncontested that these bids were rejected by the Commissioner of Natural Resources as not being "in the best interest of the State of Alaska."

As indicated previously, the primary legal argument advanced by appellant is whether AS 38.05.180(a)[6] embodies an overbroad delegation of legislative authority to the Commissioner of Natural Resources. Closely aligned with this argument is the further contention that 11 AAC 505.11, 11 AAC 505.43 and 11 AAC 505.51[7] are invalid regulations. In our view, *Kelly v. Zamarello*, 486 P.2d 906 (Alaska 1971), is dispositive of these contentions. *Kelly v. Zamarello* arose out of the same oil and gas lease sale as does the present case. There we addressed a challenge to the validity of 11 AAC 505.11 and 11 AAC 505.51 and sustained the regulations. In addition, we implicitly upheld the validity of AS 38.05.180(a) and explicitly determined that the legislature had given the Commissioner of Natural Resources "broad authority." concerning competitive bidding procedures.[8] Furthermore, in discussing 11 AAC 505.11 and 11 AAC 505.51, we concluded:

> [W]hen a regulation has been adopted under a delegation of authority from the legislature to the administrative agency to formulate policies and to act in the place of the legislature, we should not examine the content of the regulation to judge its wisdom, but should exercise a

the lands covered by the lease are lands that have been selected by the state under laws of the United States granting lands to the state and a patent has not been issued on them, a conditional lease may be issued. However, no term extension may be granted for the period during which the lease was conditional.

5. Champion Oil filed the following as purported "Genuine Issues of Material Fact":
   1. Was the bid of Champion Oil accepted as the high bid.
   2. Was the Commissioner of the Department of Natural Resources acting arbitrarily.
   3. Did the Department of Natural Resources accept Champion Oil Company's bid.
   4. Were any identifiable standards applied by the Department of Natural Resources.
   5. Did the Commissioner of Natural Resources abuse his discretion.

6. *See* note 4, *supra.*

7. The applicable regulations at the time of the 23rd Competitive Oil and Gas Lease Sale are reproduced below.

11 AAC 505.11 provided, in part:
   Competitive lands may be leased only upon competitive bidding by cash bonus bids submitted in response to a published notice of lease offer. . . .
11 AAC 505.43 provided:
   The Director, with the concurrence of the Commissioner, may reject all bids if he determines that the best interests of Alaska justify such action.
11 AAC 505.51 provided:
   Within a reasonable time following the lease sale, the Director shall award the lease to the responsible qualified bidder offering the highest cash bonus and complying with the bid requirements unless all bids are rejected.

8. *Kelly v. Zamarello*, 486 P.2d 906, 912 (Alaska 1971). We also noted that AS 38.05.020(b)(1) authorized the Commissioner to "establish reasonable procedures and adopt reasonable rules and regulations necessary to carry out" the Alaska Land Act. *Id.*

scope of review not unlike that exercised with respect to a statute.[9]

In *Kelly v. Zamarello,* we also held that neither 11 AAC 505.11 nor 11 AAC 505.51 was unreasonable or arbitrary.[10]

Concerning 11 AAC 505.43—which allows the Director, with the concurrence of the Commissioner, to reject all bids if he determines that they are not in the best interests of the State of Alaska—we note that this is the type of "valid regulation" anticipated by *Kelly v. Zamarello.* Although in *Kelly v. Zamarello,* we did not explicitly address the issue of the validity of 11 AAC 505.43,[11] we did state, in part:

> [I]t is not unreasonable for the Commissioner to determine that it is in the state's best interest to receive compensation for the leases immediately upon the award of the lease, rather than to wait for uncertain sums to arrive in the form of premium royalties.[12]

■ In light of the foregoing, we conclude that the "best interests" standard of 11 AAC 505.43 is not unreasonable, arbitrary or legally deficient.

■ Concerning the applicable standard of judicial review of decisions made by the Department of Natural Resources, we held in *Kelly v. Zamarello* that "[t]he decision by the Department of Natural Resources [in finding that the bids were nonresponsive] is a proper one for application of the reasonable basis standard of judicial review." [13] Noting that this test "is extremely useful where the administrative action under review resembles executive as opposed to legislative or judicial activity," [14] we said in *Kelly v. Zamarello,* "We do not pretend to know the precise motivation of the Commissioner in rejecting plaintiffs' bids . . ; it is sufficient for our purposes to note that there are reasonable bases to support such a rejection." [15] In the case at bar, the record adequately shows that the Commissioner and the Director had a reasonable basis to determine that acceptance of Champion's $1.00 per tract bid for the oil and gas lands involved would not be in the best interests of the state.[16] Among the facts in the record, we think it is necessary to note only the enormous disparity between the bids of

9. *Id.* at 911.

10. *Id.* at 912–13. *See* note 7, *supra,* for the texts of 11 AAC 505.11 and 11 AAC 505.51.

11. *See* note 7, *supra,* for the text of 11 AAC 505.43.

12. *Kelly v. Zamarello,* 486 P.2d 906, 912 (Alaska 1971).

13. *Id.* at 915.

14. *Id.* at 916.

15. *Id.* at 918.

16. Appellant has articulated the following additional specifications of error:

1. The regulations of the Department of Natural Resources are an invalid delegation of legislative authority.

. . . . .

3. Due process requires the Commissioner of Natural Resources to issue leases to the highest qualified bidder.

4. The Trial Court erred in ruling a rational basis exists.

5. Minimum bids must be published.

6. The standard of 'in the best interests of the State' is a pre-lease determination.

7. The Trial Court erred in granting Summary Judgment as a genuine issue of material fact existed.

We deem it unnecessary to explicitly address the other issues raised by appellant as our analysis of them has not persuaded us that the superior court erred in granting summary judgment to the state. Nevertheless, we do think it appropriate to make the following observations.

The notice of sale specifically provided that the lease would be awarded "unless all bids on the tract [were] rejected . . .." In rejecting Champion Oil's bid on each of the seven tracts in question, the state rejected all bids on those tracts and was well within its rights in so doing. Appellant's arguments that the Commissioner's actions deny him due process and that statutory language mandates the Commissioner to lease to the highest bidder do not withstand a simple reading of the statute or the notice of sale.

Appellant also contends that minimum bids must be published. However, 11 AAC 505.15 specifically states:

The director may, but need not, prescribe the minimum bid that will be considered at any lease sale.

Furthermore, there is no indication that minimum bids were established with regard to the lease sale in question.

Champion Oil and the average bids on the tracts leased.[17] In our view, this disparity in and of itself demonstrates the existence of a reasonable basis for the decision of the Commissioner of Natural Resources and the Director of the Division of Lands.

The superior court's grant of summary judgment to the State of Alaska is Affirmed.[18]

BURKE, J., not participating.

---

17. See note 2, *supra.*

18. We also think it appropriate to reiterate the observations made in *Ault v. Alaska State Mortgage Ass'n,* 387 P.2d 698, 701–02 (Alaska 1963), where we remanded a summary disposition of a constitutional challenge to the creation of the Alaska State Mortgage Association due to an inadequate evidentiary record:

> We are not holding that summary judgment procedure in cases of this nature is unacceptable. We do hold that if summary procedure is employed in cases involving important public issues where any fact is in dispute the trial judge should not attempt to render a decision unless he is satisfied that

the evidence, both pro and con, is sufficient to give him the necessary background of knowledge.