STATE of Alaska, DEPARTMENT OF NATURAL RESOURCES, Appellant,

v.

UNIVERSAL EDUCATION SOCIETY, INC., Appellee.

No. 3324.

Supreme Court of Alaska.

Aug. 25, 1978.

Jeffrey B. Lowenfels, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellant.

Gordon Schadt, Birch, Horton, Bittner & Monroe, Anchorage, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BURKE, Justice.

This case arises from an appeal to the superior court from a decision by the Commissioner of Natural Resources ("Commission" hereinafter) refusing to convert an offshore prospecting permit to a mining lease. The court found that regulations [1]

---

1. The primary regulation in question is 11 AAC 86.530 which provides:

> *Conversion of an offshore prospecting permit to a mining lease.* (a) At any time while a permit is in effect, if the permittee shows to the satisfaction of the director that the land covered by the permit contains workable mineral deposits, the permittee is entitled to a noncompetitive mining lease on all or part of the land covered by the permit, if the tract covered by the lease is in compact form. The lands leased will be described by legal subdivision according to a protracted survey.
>
> (b) Applications to convert a permit to a noncompetitive mining lease must be filed in accordance with 11 AAC 88.105.

It was promulgated pursuant to AS 38.05.-250(b) which provides:

*Tide and submerged lands.*

. . . . .

(b) Upon discovery, the right to possess and extract the minerals may be acquired by noncompetitive lease. A noncompetitive lease shall be granted to a holder of a prospecting permit for so much of the land subject to the permit as is shown to the satisfaction of the director to contain workable mineral deposits. Submerged lands containing known deposits of minerals subject to §§ 185–275 of this chapter may, in the discretion of the director, be offered by competitive bid. These lands shall be leased to the responsible qualified person offering the highest amount of cash bonus.

employed by the Division of Lands ("Division" hereinafter) in determining whether to grant an offshore mining lease to Universal Education Society, Inc. ("Universal" hereinafter) did not comport with the requirements of fundamental due process because they failed to state with sufficient particularity the standards to be met in order to satisfy the Director of the Division ("Director" hereinafter) that a workable mineral deposit is present within the land. The court also found that a letter sent to Universal may have cured any due process defects by putting Universal on notice of the requirements. The court held that if an identical letter had been sent to every offshore mining lease applicant the letter would cure the due process defects. However if the Division had sent the letter only to some applicants, the court ordered that Universal be granted a lease immediately.

Because of the number of appeal proceedings involved, the following chronology will be useful in understanding the case. On October 2, 1974, Universal's attorney requested information regarding the conversion of an offshore prospecting permit to a mining lease pursuant to AS 38.05.250(b).[2] The Division responded by letter on October 8, 1974, informing Universal that the Director must be shown (a) that a workable, locatable mineral deposit has been discovered and (b) the limits of the deposit. On November 6, 1974, Universal formally notified the Division of its desire to convert its prospecting permits to 55 year lease permits. On November 8, 1974, the Division sent Universal a notice by certified mail entitled "Showing of Workable Deposits Required." The notice essentially set forth the same requirements discussed in the October 8, 1974, letter.[3] In response to the notice, Universal on December 6, 1974, submitted a letter and exhibits stating that the information was "in partial fulfillment of the requirements" for converting the prospecting permits to mining leases. The Division replied on December 10, 1974, by a second certified notice reiterating the requirement that the application be substantiated by specific geologic and engineering data as to "the type, grade, quantity, extent, and character of the mineral deposits" as well as information about the location, depth, volume, value and description of each sample submitted. In response to the second notice, Universal submitted a brief letter with some general information.[4]

On February 26, 1975, the Division issued its decision denying the conversion. In its decision the Division cited Universal's failure to provide it with the specific information which had been requested by three different communiques as the reason for the denial.

On March 14, 1975, Universal applied to the Division for reconsideration of its application and requested oral argument with the reconsideration request. On April 29,

---

2. See note 1, supra.

3. E. g., geologic and engineering data showing the type, grade, quantity, extent, and character (thickness, attitude, type and depth) of the mineral deposit. This information was to be supported by sample data (location, depth, volume, value and description of each sample), engineering data (character of the mineable material, water depth, engineering tests on mineability) and any interpretive data necessary to an understanding of the engineering data compiled.

4. The letter read as follows:
   The following additional data is furnished pursuant to your request dated December 10, 1974.
   The soil formation is silt, sand and gravel. This is documented by extensive exploration by the permittee and by published reports. This is a placer type deposit.
   The deposit is five miles by two miles, more or less.
   The mineral deposits in the subject permit consists of gold and other heavy metals. This is documented as to type and grade by the data previously submitted during the past eight years.
   The water depths range from zero to approximately thirty feet.
   The volume of the placer type deposit is several tens of millions of cubic yards. The minability of placer deposits and techniques for separating heavy minerals are well-known in the mining industry and need not be repeated herein.
   The permittee believes that it is now entitled to a noncompetitive mining lease on all of the lands covered by the above permits.

1975, Universal's President, Paul D. Montague, and its attorney, Barry Donnellan, presented their oral arguments to the Director of the Division, Michael C. T. Smith. On May 5, 1975, Mr. Smith's decision was issued affirming the February 26, 1975, denial.

On May 22, 1975, pursuant to 11 AAC 88.155(a),[5] Universal submitted an application to the Commissioner of Natural Resources for reconsideration of the May 5, 1975, decision by the Director of the Division. On July 11, 1975, W. T. Elsing, as attorney for Universal, submitted a brief in support of Universal's appeal that contained additional information on the proposed mining site.[6] The record on appeal reveals that prior to forwarding Universal's application to the Commissioner, the Division did in fact review the additional data presented in Mr. Elsing's brief and found that it failed to supply the application with the specificity required under 11 AAC 86.-530.

On September 26, 1975, the Commissioner rendered his decision affirming the May 5, 1975, denial by the Director. Universal's petition for reconsideration of the Commissioner's decision was denied and on December 11, 1975, Universal petitioned for judicial review.

It is clear that neither AS 38.05.250(b) nor 11 AAC 86.530 compels a hearing on the issue of the conversion of an offshore prospecting permit to a mining lease. In its brief below, Universal contended that due process considerations required that a "full evidentiary hearing" be conducted. The Division in its brief responded to Universal's right to hearing argument and both sides argued this point at the hearing before Judge Kalamarides. However, during that hearing Judge Kalamarides injected a new due process consideration into the case. He expressed his doubts about the regulations in question,[7] suggesting that they did not "meet with fundamental due process in that they do not set out with sufficient particularity the standards that must be met to prove to the satisfaction of the Director that a workable mineral deposit is present within the land."

█ In *Nichols v. Eckert*, 504 P.2d 1359 (Alaska 1973), we said that for the due process clause to apply "there must be state action and the deprivation of an individual interest of sufficient importance to warrant constitutional protection." *Id.* at 1362 (footnote omitted). We are not persuaded that Universal has such an interest. In reaching this conclusion, we look first to the due process clauses of the Alaska Constitution and the United States Constitution.[8]

"Deprive" is the key word for purposes of this case. To be deprived of something, one must first possess it. Universal merely applied for a mining lease. It had no property right of which it was deprived by the Director's denial of the application. This case is easily distinguishable from *McCarrey v. Commissioner of Natural Resources*, 526

---

**5.** 11 AAC 88.155(a) provides:

*RECONSIDERATION.* (a) An order, decision or other action of the director or the division which may be made or taken without the advance approval, consent or concurrence of the commissioner is subject to reconsideration by the director. After reconsideration by the director, any person aggrieved by the decision of the director may appeal the decision to the commissioner.

**6.** In *Union Oil Co. of Cal. v. State*, 574 P.2d 1266, 1272 (Alaska 1978), we decided that the Commissioner in his discretion may consider additional evidence. However, nothing compels him to consider new evidence.

**7.** 11 AAC 86.530; AS 38.05.250(b).

**8.** Article I, section 7 of the Alaska Constitution provides:

*Due Process.* No person shall be deprived of life, liberty, or property, without due process of law. The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.

Article XIV, Section 1 of the United States Constitution states in part:

*Citizenship rights not to be abridged by states. . . .* No state shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

P.2d 1353 (Alaska 1974), in which the termination of a grazing lease was at issue. In that case we held that terminating state grazing leases without affording the lessee notice and hearing would undermine the explicit due process guarantee provided by Article I, section 7 of the Alaska Constitution. As a lessee, the appellant in *McCarrey* possessed a property interest in the land. Universal has no such interest.

Nor does Universal's interest approximate the interest in *Herscher v. State, Dept. of Commerce,* 568 P.2d 996 (Alaska 1977), where we found that the proprietary interest in a hunting guide license is of sufficient importance to warrant due process protection. The license in *Herscher* already had been granted so that its revocation constituted a deprivation of the individual's property right in the license.[9]

■ Finally, we find no merit in Universal's argument that 11 AAC 86.530 is void for vagueness and therefore violative of due process requirements. Universal has failed to direct us to any case on point and instead has presented us with various cases in which criminal statutes were held to be void for vagueness. 11 AAC 86.530 lacks the punitive character of the statutes involved in cases cited by appellee. Those cases, therefore, are not persuasive.

■ This is not to say that Universal is not entitled to a full and fair opportunity to present its case to the Director and the Commissioner. This requirement is implicit in the provision of AS 38.05.250(b) which provides that the holder of a prospecting permit shall be granted a noncompetitive lease "for so much of the land subject to the permit as is shown to the satisfaction of the director to contain workable mineral deposits." To read this statute as requiring anything less than a full and fair opportunity for the permit holder to present his case would be unreasonable. The legislature could not have intended that the Director make his decisions in reliance on some arbitrary amount of information. The responsibility for providing the data to the Di-

rector is on the permit holder. Only with a full and fair opportunity to present his case can the permit holder receive fair consideration of his application. The benefits of a full presentation by the permit holder inure to the State as well by providing comprehensive data for the decisions made by the Director.

As we noted at the outset, there is no express statutory provision for the "full evidentiary hearing" which Universal contends it should have received. Similarly, as discussed previously, there is no deprivation such that a hearing is required by either the state or federal constitutions. In AS 38.05.-250(b) the legislature directed that an offshore lease be granted to a prospecting permit holder who shows "to the satisfaction of the director" that the land subject to the permit contains "workable mineral deposits." There is no indication that the legislature intended a hearing on the question and under the circumstances a hearing would be inappropriate because there are no issues of fact. As Professor Davis has explained the distinction,

Of great consequence is the rather elementary proposition that the method of trial is designed for resolving issues of fact, and *that the method of argument, not the method of trial, is normally the appropriate oral process for resolving nonfactual issues of law and policy and discretion.* . . . Curiously enough, this simple proposition is often misunderstood by both agencies and courts.

.   .   .   .   .

The method of trial is never required except when facts are in dispute. The true principle has been stated by the Tenth Circuit: '[I]t is fundamental to the law that the submission of evidence is not required to characterize "a full hearing" where such evidence is immaterial to the issue to be decided. . . . Where no genuine or material issue of fact is presented the court or administrative body may pass upon the issues of law after according the parties the right of

9. *See United States v. Walker,* 409 F.2d 477, 481 (9th Cir. 1969).

argument.' [*Producers Livestock Marketing Assn. v. U. S.*] 241 F.2d 192, 196 (10th Cir. 1957), cert. granted 353 U.S. 982, [77 S.Ct. 1283] 1 L.Ed.2d 1141. K. C. Davis, *Administrative Law*, Sec. 7.01 at 409, 411 (1958). [emphasis added].

■ In the case at bar, the issue clearly was discretionary; that is, had Universal shown to the satisfaction of the Director that the land subject to its permits contained workable mineral deposits? Therefore the inquiry becomes whether or not Universal had an opportunity to argue its case before the Director. The answer to this question must be in the affirmative. On April 29, 1975, Universal's President and its attorney argued orally before the Director for reconsideration of the Division's earlier denial of Universal's application. Prior to the oral presentation, on at least three occasions, Universal had had notice of the information required by the Division and sufficient opportunity to provide the information. As discussed previously, it was within the Commissioner's discretion to review or not review Universal's July 11, 1975, brief on the appeal of the Director's denial of the application. *Union Oil v. State, supra.* Thus the lack of argument by Universal at that appeal stage cannot constitute a denial of Universal's right to argue its case.

We conclude that in denying Universal's application, the applicable rules of law and procedure were observed.

The remaining question is by what standard should the agency's decision have been reviewed.

In the superior court, Universal argued that the Director's decision must be supported by substantial evidence. The Division in its reply brief contended that the proper test to be applied by the reviewing court in this case is the reasonable basis test. During the oral argument below, the Division reiterated its contention that the reasonable basis test was the only appropriate test based on the fact that offshore

leases are peculiarly within the expertise of the Division. Because of the court's holding as to the due process issue it did not specifically decide which test should be applied. However, because we find that remand is required, we deem it necessary to clarify this point in advance of the hearing on remand.

In *Kelly v. Zamarello*, 486 P.2d 906 (Alaska 1971), this court set forth the guidelines to be used in determining the standard of review for administrative decisions. As stated in *Kelly*,

> One type [of administrative decision on questions of law] involves questions in which the particularized experience and knowledge of the administrative personnel goes into the determination. When this type of question is presented to the court for review, deference should be given to the administrative interpretation, since the expertise of the agency would be of material assistance to the court.
>
> . . .
>
> The other kind of case presents questions of law in which knowledge and experience in the industry affords little guidance toward a proper consideration of the legal issues. These cases usually concern statutory interpretation or other analysis of legal relationships about which courts have specialized knowledge and experience. Consequently, courts are at least as capable of deciding this kind of question as an administrative agency.
>
> . . . . .
>
> . . . We believe that the reasonable basis approach should be used for the most part in [reviewing] cases concerning administrative expertise as to either complex subject matter or fundamental policy formulations. 486 P.2d at 916–17.[10]

It is clear to us that the decision to grant or deny offshore mining leases is within the expertise of the Division of Lands. The decision involves both fundamental policy formulations and complex subject matter.

---

10. *See Champion Oil Company, Inc. v. Herbert*, 578 P.2d 961 (Alaska 1978); *Jager v. State*, 537 P.2d 1100 (Alaska 1975); *Mukluk Frgt. Lines, Inc. v. Nabors Alaska Drilling, Inc.*, 516 P.2d 408, 411–12 (Alaska 1973); *Swindel v. Kelly*, 499 P.2d 291 (Alaska 1972).

The Division has been entrusted by the legislature with the allocation of lands for offshore mining leases.[11] In making this allocation the Division must make, among others, determinations as to what is the best use of the land, where precisely the land is located, and what method of mining will most efficiently recover the valuable minerals. By necessity the answers to these questions are based upon complex data which no court is as capable of analyzing and deciding as is the Division.

By using the term "workable mineral deposit" in AS 38.05.250(b) to define what must be "shown to the satisfaction of the director" in order to acquire a noncompetitive lease, we are convinced that the legislature was cognizant of the need for a flexible standard. Furthermore, in entrusting this determination to the Director, the legislature took notice of the peculiar expertise required in making such decisions.

■ For these reasons we conclude that the reasonable basis test is the test required on review as to the propriety of decisions to grant or deny offshore leases pursuant to AS 38.05.250(b) and 11 AAC 86.530.[12]

We remand this case to the superior court for a decision consistent with this opinion.

RABINOWITZ, Justice, with whom BOOCHEVER, Chief Justice, joins concurring in part, dissenting in part.

I dissent from the majority's conclusion that Universal has no interest of sufficient importance to warrant constitutional protection from state action. I think the opinion dismisses too readily the existence of a property interest requiring procedural due process protection. Although no lease or license had been granted to Universal, the language of the statute and regulations suggests a reasonable, governmentally induced expectation that a noncompetitive lease would be granted upon a proper showing of workability. AS 38.05.250(a) provides for 10-year permits to prospect for deposits of minerals. The statute specifies: "No minerals from lands under a prospecting permit may be mined and marketed or used, except for limited amounts necessary for sampling or testing." The incentive for expenditure of substantial sums of money in prospecting is the likelihood of securing a lease. AS 38.05.250(b) provides, in part:

A noncompetitive lease *shall be granted* to a holder of a prospecting permit for so much of the land subject to the permit as is shown to the satisfaction of the director to contain workable mineral deposits. (emphasis added)

11 AAC 86.530(a) provides, in part:

[I]f the permittee shows to the satisfaction of the director that the land covered by the permit contains workable mineral deposits, the permittee *is entitled* to a noncompetitive mining lease . . . . (emphasis added)

The state's encouragement of permittees in their expenditure of substantial sums in prospecting for deposits of minerals and the strong legislative and administrative language just quoted suggest to me that in cases such as the one at bar there should be a clearer expectation of receiving the lease than in cases where the administrator's discretion is total. *See, e. g., United States v. Walter*, 409 F.2d 477, 481 (9th Cir. 1969).

Further, the Supreme Court of the United States has provided some guidance as to when a governmentally induced expectation of a property interest amounts to an entitlement requiring due process. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972), where the Court said, in part:

decision by the Director rather than a question of fact. Furthermore, the court in *Verrue* did not state why it applied the substantial evidence test. However, as discussed in this opinion, the law in Alaska is well defined on this point and the reasonable basis test is clearly required.

---

11. AS 38.05.250.

12. Because of Universal's suggestion that *Verrue v. United States*, 457 F.2d 1202 (9th Cir. 1972), is on point, we take this opportunity to correct this misconception. *Verrue* involved the burden of proof as to a question of fact under the federal mining laws. The instant case presents a challenge to a discretionary

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it.

In *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570, 580 (1972), Justice Stewart wrote:

> '[P]roperty' denotes a broad range of interests that are secured by 'existing rules or understandings.' [citation omitted] A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.[1]

On the basis of the foregoing, I would hold that Universal has a property interest which is protected by the due process clause of the Alaska Constitution.[2]

I concur in all other aspects of the court's opinion.

1. In his recently published treatise on constitutional law, Professor Tribe discusses the evolution of the "statutory entitlement" doctrine—extending procedural due process beyond the common law core of personal interest. *See* L. Tribe, American Constitutional Law § 10–9 (1978). In discussing *Board of Regents v. Roth* and the Court's suggestion that *present enjoyment* of a statutory entitlement is an indispensable prerequisite to due process protection (*i. e.*, that the interest in specific benefits *has already* been acquired), Professor Tribe states:

> It might thus be argued that there exists no due process duty to afford a hearing when the state turns down an initial request (as opposed to a renewal application) for welfare, a government job or parole. But it would be inconsistent with any intelligible rationale underlying due process protection to deny all procedural safeguards to the new applicant where the law provides that all individuals meeting certain objective criteria

are entitled to, say, welfare. (footnotes omitted)
*Id.* at 518–19.

2. I think our decision in *City of Homer v. State, Dep't of Natural Resources*, 566 P.2d 1314 (Alaska 1977), is relevant in deciding whether Universal's expectations deserve due process protection and determining what level of procedural formality is required. There we treated an application for certain tidelands as a "property right" requiring some form of due process protection:

> Private parties are entitled to due process of law before property rights may be removed; therefore, the minimal protection provided by Departmental adjudicatory procedures must meet that standard. Municipalities are thus likewise entitled to due process in the adjudication of claims to these tide and submerged lands.
*Id.* at 1317.