The CITIZENS FOR THE PRESERVA-
TION OF THE KENAI RIVER, INC.,
Appellant/Cross-Appellee,

v.

William SHEFFIELD, Governor, State of
Alaska; State of Alaska, Department of
Natural Resources; Esther Wunnicke,
Commissioner, Department of Natural
Resources, Appellees/Cross-Appellants.

Nos. S–2216, S–2244.

Supreme Court of Alaska.

July 22, 1988.

Wayne Anthony Ross, Ross, Gingras, Bailey & Miner, Anchorage, for appellant/cross-appellee.

Michael J. Frank and Kenneth C. Powers, Asst. Attys. Gen., Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellees/cross-appellants.

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

The Citizens for the Preservation of the Kenai River, Inc. (CPKR) challenged the validity of a state regulation promulgated by the Department of Natural Resources (DNR) that prohibits the operation of boats with motors of more than 35 horsepower

on the Kenai River. *See* 11 AAC 20.860 (eff. 5/11/85; am. 4/25/86). The superior court granted summary judgment to the State. The court denied the State's motion for attorneys' fees on the ground that CPKR was a public interest litigant.

CPKR appeals, arguing that the superior court incorrectly assigned to CPKR the burden of proving the invalidity of the regulation, and also that the regulation is invalid and unconstitutional. On cross-appeal, the State argues that the superior court erred in denying its motion for attorney's fees and that CPKR is not a public interest litigant.

We affirm.

## I.

The regulation at issue in this case provides in part:

BOAT MOTOR USE. (a) Except as prohibited by 11 AAC 20.865, the operation of a boat by the use of a boat motor is allowed in the Kenai River Special Management Area as follows:

(1) the operation of a boat by use of a single boat motor with a manufacturer's horsepower rating of no greater than 50 horsepower is allowed until May 1, 1987; and

(2) the operation of a boat by use of a single boat motor with a manufacturer's horsepower rating of no greater than 35 horsepower is allowed beginning May 1, 1987.

11 AAC 20.860.

The superior court correctly placed the burden of proving the invalidity

of the regulation on CPKR. *See State v. Alyeska Pipeline Serv. Co.*, 723 P.2d 76, 78 (Alaska 1986) ("[a] regulation is presumptively valid, therefore the burden of proving invalidity is on the party challenging the regulation"); *Alaska Int'l Indus. v. Musarra*, 602 P.2d 1240, 1245 n. 9 (Alaska 1979); *Union Oil Co. of Cal. v. State, Dep't of Natural Resources*, 574 P.2d 1266, 1271 (Alaska 1978).[1]

In *Kelly v. Zamarello*, 486 P.2d 906 (Alaska 1971), we established a framework for reviewing a challenge to the validity of an administrative regulation. We stated:

First, we will ascertain whether the regulation is consistent with and reasonably necessary to carry out the purposes of the statutory provisions conferring rulemaking authority on the agency.... Second, we will determine whether the regulation is reasonable and not arbitrary.

*Id.* at 911.

We are not persuaded by CPKR's arguments that 11 AAC 20.860 is unreasonable, arbitrary, or not rationally related to legislative goals. The record is replete with evidence that the regulation was the product of a careful, reasoned, and lawful decisionmaking process aimed at satisfying the legislative goals.

The DNR promulgated 11 AAC 20.860 pursuant to rulemaking authority conferred by AS 41.20.504(a). Among the stated legislative purposes is "to manage recreational uses" in the Kenai River area. AS 41.21.500. In view of the DNR's earlier findings of a "trend toward larger, louder,

**1.** We reject CPKR's argument that our holding in *Kingery v. Chapple*, 504 P.2d 831, 835–36 (Alaska 1972) suggests that the State should bear the initial burden here. The *Kingery* case involved a constitutional challenge to regulations requiring that motorcyclists wear a helmet and goggles, and that motorcycles be equipped with mirrors and a windshield. *Id.* at 833. The regulations were designed to promote the safety of motorcycle operators and the traveling public. *Id.* We carved a narrow exception to the general rule that the plaintiff carries the burden of proving the invalidity of a regulation, stating:

[T]he burden of proving the negative of a public-protection purpose raises special problems for the individual challenger of adminis-

trative regulations. Hence we conclude that in such cases the state should be required to come forward with at least prima facie evidence that such a reasonable relation to purpose exists before the burden shifts to the complainant.

Since then, we have not ruled on the continued vitality of that exception. Nor do we do so in the present case, because the prerequisite is not satisfied: unlike in *Kingery*, the regulation at issue in this case evidently had numerous purposes, including promoting public safety, but also reducing noise, habitat destruction, bank erosion, and conflicts among user groups. We hold that the exception to the usual rule would not apply under these circumstances.

and faster riverboats" on the Kenai River having "possible adverse impacts such as accelerated bank erosion, habitat destruction, noise and safety concerns," we think 11 AAC 20.860 is consistent with and reasonably necessary to carry out the legislature's purposes. Moreover, the regulation is patently reasonable: a given boat with a larger engine is capable of going faster,[2] posing more danger, and producing more noise than the same boat with a smaller engine. While horsepower is certainly not the only factor contributing to problems the legislature directed the DNR to address, there has never been any prohibition against an administrative agency attacking such problems one step at a time.

As for CPKR's claim that 11 AAC 20.860 violates article VIII, sections 2 and 3 of the Alaska Constitution, CPKR did not raise it below and does not adequately brief it in this appeal. Therefore we do not address it. *See, e.g., State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 528 (Alaska 1980).

## II.

On cross-appeal, the State argues that the superior court erred in determining that CPKR was a public interest litigant and in failing to award attorneys' fees to the State.

We have applied the abuse of discretion standard in reviewing a trial court's finding that a litigant has public interest status. *See, e.g., Kenai Lumber Co. v. LeResche,* 646 P.2d 215, 222–23 (Alaska 1982) (applying the abuse of discretion standard, we found the trial court "could have concluded that [Kenai Lumber Co.] had sufficient economic reasons to challenge the amendment regardless of the grounds for the challenge," and then upheld the trial court's award of fees against Kenai Lumber Co.); *Sisters of Providence in Wash., Inc. v. State, Dep't of Health and Social Servs.,* 648 P.2d 970, 980 (Alaska 1982) (in which we were persuaded "that the superior court could have concluded that Providence had sufficient private economic reasons to

litigate," and then affirmed the trial court's finding that the case did not fit within the public interest exception to fee awards).

Attorneys' fees should not be awarded under Civil Rule 82 against a public interest litigant. *Kenai Lumber Co.,* 646 P.2d at 222. We have set forth a four-part test for determining whether a party is a public-interest litigant:

(1) whether the case is designed to effectuate strong public policies; (2) whether, if the plaintiff succeeds, numerous people will benefit from the lawsuit; (3) whether only a private party could be expected to bring the suit; and (4) whether the litigant claiming public interest status would lack sufficient economic incentive to bring the lawsuit if it did not involve issues of general importance.

*Alaska Survival v. State, Dep't of Natural Resources,* 723 P.2d 1281, 1292 (Alaska 1986) (quoting *Oceanview Homeowners Ass'n v. Quadrant Constr. and Eng'g,* 680 P.2d 793, 799 (Alaska 1984)).

The superior court expressly found that CPKR is a public interest litigant but gave no explanation for its finding other than by citing *Alaska Survival.* We now review that finding.

The first element of the four-part public interest test is whether the case is designed to effectuate strong public policies. While public policy does not favor high-horsepower motors per se, public policy does favor recreational use of rivers by the public and access to riparian lands. The trial court could have found that this case was "designed to effectuate strong public policies."

The second element of the public interest test is whether numerous people will benefit if the party bringing the suit succeeds. This is satisfied in this case.

The third element is whether only a private party could be expected to bring this suit. The State suggests that the federal government conceivably could have sued the State for interference with its commerce powers and its navigational servi-

---

2. Of course, as CPKR observes, one boat may go faster than another even though both have engines of the same horsepower, depending on

how fast the drivers choose to go, size and weight of the boats, hull configuration, and so on.

tude. As a practical matter, we do not find this persuasive. Thus, we conclude that the trial court could have found that this requirement was satisfied.

The final element is whether CPKR would lack sufficient economic incentive to bring the lawsuit if it did not involve issues of general importance. On one hand, CPKR, as a non-profit corporation formed solely for the purpose of prosecuting this case, has no economic interest in the outcome of the case. CPKR seeks no money damages, and evidently owns no riparian property, outboard motors, or anything else that would be affected by this litigation. On the other hand, CPKR represents the interests of individuals who themselves may have sufficient economic interest to rule out the possibility of public interest status.[3]

In this case, even if it is appropriate to look through the shell corporation to the interests of those individuals the corporation represents, we would affirm the court's finding of public interest status. The economic incentives of the members represented by CPKR vary considerably from person to person. For example, one member of CPKR, who is a lodge owner and used boat dealer, estimated in an affidavit that he will suffer a loss of $20,000 to $30,000 per year as a result of the 35 horsepower limitation. Several other members claimed lesser losses from inability to use or sell their large motors, and the like. We can speculate that those members that did not submit affidavits had even smaller economic incentives. However, whether an entity is a public interest litigant cannot depend on the interests of a single member. Rather, it must depend on the interests of typical members. We find that the superior court could have concluded that, of the alleged one hundred or more individuals represented by CPKR, all but a few had economic incentives that were insubstantial

or diffuse enough to satisfy the fourth element of the public interest test.

Accordingly, we AFFIRM the superior court on the merits and on the attorneys' fees.

RABINOWITZ, Justice, joined by COMPTON, Justice, dissenting in part.

I disagree with the majority's holding that Citizens for the Preservation of the Kenai River (CPKR) is a public interest litigant.

In my view, there is nothing in the record on which to base a conclusion that most CPKR members lacked financial incentive to bring this lawsuit. The group's submissions to the superior court emphasize its members' alleged economic injuries. Of CPKR members who submitted affidavits detailing their alleged losses as a result of the regulation, only one submitted a definite figure less than $20,000. That person claimed the loss of a $12,000 boat. Two other affiants did not place dollar amounts on their alleged losses, but claimed the values of their riparian properties were "substantially" diminished.

Despite claims of significant financial losses by CPKR affiants, the majority speculates that CPKR members who did not submit affidavits had little economic incentive to participate in the suit. This speculation is unfounded. The record contains no indication that "all but a few" CPKR members have little or no financial interest in this suit. On the contrary, a number of CPKR members claimed losses because of inability to sell their large boats, allegedly rendered "useless" by the motor horsepower restriction, due to depressed market conditions for large boats. Presumably, all owners of large boats who wished to use their boats on the Kenai River would find themselves facing similar losses. Since CPKR apparently represents primarily, if not exclusively, owners of large boats who use the Kenai River, it follows that most

---

**3.** CPKR's second amended complaint alleges that

[CPKR] represents the interests of more than 100 individuals who are a cross-section of Kenai River boat owners and land owners who are directly affected ... because mem-

bers with boat engines larger than 35 horsepower will be forced to obtain smaller boats and engines and in some instances because of the size limitations be denied access to the river itself.

CPKR members had a significant financial incentive to attempt to invalidate the horsepower limit.

I would hold that CPKR does not satisfy the test for determining whether a party is a public interest litigant because its members had sufficient economic incentive to bring this lawsuit regardless of the grounds for the challenge, and would remand this case to the superior court for consideration of the state's motion for attorney's fees.